**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**James A. OVERMAN, Marie T. Overman,
Circle J. Inc., a corporation,
Defendants-Appellants.**

**No. 23866.**

United States Court of Appeals,
Ninth Circuit.

April 8, 1970.

Loren D. Prescott (argued), of Reaugh, Hart, Allison, Prescott & Davis, Seattle, Wash., for defendants-appellants.

Karl Schmeidler (argued), Atty., Johnnie M. Walters, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., Stan Pitkin, U. S. Atty., Gale D. Barbee, Ralph Bremer, Seattle, Wash., for plaintiff-appellee.

Before BARNES, ELY and HUF-STEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge.

This interlocutory appeal raises novel questions about the creation and enforcement of federal tax liens levied on Washington community property to secure payment of a husband's premarital income tax liability.

In 1954 the Internal Revenue Service levied deficiency assessments against the taxpayer in respect of his income taxes for the years 1946 and 1947. The taxpayer married Marie Overman in 1948. When the taxpayer failed to meet the deficiency demand, a notice of federal tax liens was filed with the proper Washington state officials. The Government sued in 1960 to recover judgment against the taxpayer for the tax liabilities underlying the assessments, and a judgment for $109,709.56 in favor of the Government was rendered in 1961. The judgment recited that it was "individually only, and not against his marital community." The Government brought the present action on August 2, 1967, under section 7403 of the Internal Revenue Code (26 U.S.C. § 7403), to enforce the liens, joining as defendants the taxpayer, his wife, and certain other persons claiming an interest in the property attached.[1]

In the order from which this appeal has been taken the district court decided that the Government had a valid lien on the taxpayer's undivided one-half interest in the marital community, that the lien was enforceable against the community assets as to which foreclosure was sought, and that the Government was not precluded from enforcing its lien by limitations or laches, or by the doctrines of res judicata, estoppel, or waiver. We affirm the order.

## I.

Section 6321 of the Internal Revenue Code (26 U.S.C. § 6321) provides that the amount of the delinquent taxpayer's liability "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." The statute incorporates state law for the limited purpose of ascertaining whether or not the taxpayer's interest is "property" or "rights to property." (Aquilino v. United States (1960) 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365; United States v. Bess (1958) 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135.) If state law raises the taxpayer's interest to the status of property or rights to property, federal law will cause a lien to attach to that interest. We must thus turn to Washington law to determine whether the taxpayer's interest in the community property constitutes "property" or "rights to property" belonging to him. We believe that it does.

Under Washington law the marital community, with certain stated exceptions, is composed of all property acquired by the spouses after marriage. (Rev.Code Wash. §§ 26.16.010, 26.16.020, 26.16.030.) The interest of each spouse in the community is an intangible asset, giving each spouse an equal, present, and vested right in the marital community with full rights of enjoyment. (In re Towey's Estate (1945) 22 Wash.2d 212, 155 P.2d 273; Marston v. Rue (1916) 92 Wash. 129, 159 P. 111.) The interest of each in the community is protected from certain acts of the other that would impair his interest. (E. g., Occidental Life Ins. Co. v. Powers (1937) 192 Wash. 475, 74 P.2d 27; Bergman v. State (1936) 187 Wash. 622, 60 P.2d 699; Rev.Code Wash. §§ 26.16.030, 26.16.040, 26.16.100.) Each spouse can sell or give his com-

---

1. Some of the property involved is community property, some is separate property, and the status of the remainder property is yet undetermined. Only three of the original defendants are appellants: the taxpayer, Marie Overman, and Circle J., Inc.

munity to the other during the life of the community (Rev.Code Wash. § 26.16.050), and each has the right of testamentary disposition of his moiety. (In re Towey's Estate, *supra*; Rev.Code Wash. §§ 11.04.050, 26.16.030.)

These incidents accorded to the taxpayer by virtue of his interest in the marital community make it appropriate to characterize that interest as "rights to property" for purposes of section 6321. The interest gives the taxpayer present, vested, and substantial rights to the property of the community, and that interest has been described by both the Supreme Court of Washington and the Supreme Court of the United States as a "vested property right." (In re Towey's Estate, *supra*; Poe v. Seaborn (1930) 282 U.S. 101, 111, 51 S.Ct. 58, 75 L.Ed. 239.) No more is needed to identify the interest as one to which a federal tax lien can attach. We disapprove the contrary conclusion reached in Stone v. United States (W.D.Wash.1963) 225 F.Supp. 201.

The taxpayer contends, however, that his interest in the community is made nonattachable by the Washington rule that the community is generally immune from liability for a husband's premarital debt.[2] While admitting that a state rule of exemption is ineffective against a United States tax lien (United States v. Heffron (9th Cir.) 158 F.2d 657, cert. denied (1947) 331 U.S. 831, 67 S.Ct. 1510, 91 L.Ed. 1845), the taxpayer argues that the Washington rule is more than that. He contends that the rule is one of property law, and creates a limitation on the extent and quality of his ownership rights under state law. Even as-

suming that this characterization of Washington law is correct, all that section 6321 requires is that the interest be "property" or "rights to property." It is of no statutory moment how extensive may be those rights under state law, or what restrictions exist on the enjoyment of those rights. Similarly, taxpayer's reliance on the "entity theory" of community property is misplaced. Early Washington cases suggest that neither spouse has title to the assets of the community,[3] but our concern here is with the taxpayer's *interest* in the community. Whatever may be said with regard to his interest in particular assets in the community, Washington law has never suggested that his interest in the community is nonexistent or valueless.[4] Thus, neither the rule of nonliability nor the entity theory negates our conclusion that the taxpayer's interest constitutes "rights to property."

The attachment of a tax lien under section 6321 and the enforcement of the lien under section 7403 of the Code present different questions. From the conclusion that a lien attaches, the further conclusion that these particular liens may be foreclosed or otherwise enforced in a particular manner does not automatically follow.

We agree with the Government that the right of the United States to enforce its liens on Washington community property does not depend on Washington law regulating the rights of creditors generally. The result is sometimes reached by labeling as an "exemption" state law immunizing some kinds of property against the claims of some kinds of creditors and by concluding that such

---

2. The rule was modified to some extent in 1969. Laws of 1969, Ex.Sess., ch. 121, *amending* Rev.Code Wash. § 26.16.200. But the new statute has been given solely prospective application. National Bank of Commerce v. Green (1969) 1 Wash. App. 713, 463 P.2d 187. An established exception to the rule is that a divorced wife may collect alimony from personal property of the husband's second marital community. Fisch v. Marler (1939) 1 Wash.2d 698, 97 P.2d 147.

3. Stockand v. Bartlett (1892) 4 Wash. 730, 31 P. 24; Ryan v. Fergusson (1891) 3 Wash. 356, 28 P. 910; *but cf.* Bortle v. Osborne (1930) 155 Wash. 585, 285 P. 425.

4. *Compare* United States v. Hutcherson (8th Cir. 1951) 188 F.2d 326, discussing the Missouri estate by the entirety.

law does not bind the United States. (*E. g.*, United States v. Heffron, *supra.*) Labels aside, state law regulating creditors' rights does not apply to the United States because the United States has not looked to state law to decide how to enforce federal tax liens (Aquilino v. United States, *supra*, 363 U.S. at 512–514, 80 S.Ct. 1277) and nothing in section 7403, under which this action was brought, suggests that Congress intended to change that rule.

Section 7403 provides that the Government in an action to enforce its tax lien may "subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability." It requires joinder of all parties having an interest in the property, and, if a claim of the United States is established, "the court * * * may decree a sale of such property * * * and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States."

██ Once the lien has been established, the statute empowers the district court to subject the whole of the property in which the delinquent taxpayer has an interest to a forced sale. The power is not limited to the sale of only the delinquent taxpayer's interest. (United States v. Trilling (7th Cir. 1964) 328 F.2d 699, 703; accord, Washington v. United States (4th Cir. 1968) 402 F.2d 3, cert. filed (Dec. 13, 1968) 38 U.S.L.W. 3001 (no. 22); United States v. Mosolowitz (D.Conn.1967) 269 F. Supp. 12. *Contra,* Folsom v. United States (5th Cir. 1962) 306 F.2d 361, 367.) Thus, the statute contemplates that the district court may subject the interests of persons other than the taxpayer to an involuntary conversion during the course of enforcing the Govern-

ment's lien on the delinquent taxpayer's interest in the same property. The owners other than the taxpayer, however, are entitled to just compensation from the proceeds of the sale for that "taking."

██ We emphasize that section 7403 is cast in mandatory terms only in respect of the establishment of the Government's lien, the joinder of all persons interested in the property involved, and the determination of their respective interests. The remainder of the section confers broad discretionary powers upon the court in shaping a decree designed to work substantial justice among all interested persons. "Congress [in enacting § 7403] intended that the Court function with the full traditional flexibility of the Chancellor, United States v. Morrison, 5 Cir., 247 F.2d 285." (United States v. Boyd (5th Cir.) 246 F.2d 477, 481, cert. denied (1957) 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 188.)

██ In shaping its decree the court, however, must turn to state law to define the property interests involved. Under Washington law, as we have earlier stated, each spouse has an undivided one-half interest in the marital community.[5] The Government cannot claim from the proceeds of sale more than that share of the proceeds attributable to the taxpayer's half of the community interest in the asset. It cannot reach the proceeds attributable to the wife's interest. Her interest was not subject to attachment for her husband's premarital tax debt, and the Government's right to share in the proceeds of sale does not exceed the taxpayer's interest in the property subjected to the lien. (*Cf* Stuart v. Willis (9th Cir. 1957) 244 F.2d 925, 929; United States v. Winnett (9th Cir. 1947) 165 F.2d 149, 151.)

██ We therefore conclude that the district court correctly held that the tax-

5. The undivided nature of that interest is not impermeable under state law, however. *See* Fisch v. Marler, *supra* note 2. We have no occasion, therefore, to decide the enforceability of a federal tax lien against property in which owners have an absolutely indivisible interest under state law. *Compare* Shaw v. United States (9th Cir. 1964) 331 F.2d 493, 497, *with* Jones v. Kemp (10th Cir. 1944) 144 F.2d 478, 480.

payer's undivided one-half interest in the community was subject to the tax liens, and that those liens could be enforced by foreclosure against assets of the community. From the proceeds of the sale, the Government should receive such share attributable to the taxpayer's interest, due regard being given to the compensation of those persons, including the taxpayer's wife, whose interests have been established in the property.

The district court has not shaped a final decree. Nothing in the record before us on this interlocutory appeal suggests that the court has abused its discretion in causing a forced sale of the property or in allocating the proceeds of a sale to the persons having interests in such property.

## II.

Enforcement of the Government's liens on the taxpayer's interest in the community is not barred by limitations, laches, or equitable estoppel.

■■■■■ The tax liens that the Government seeks to enforce in the present action arose in 1954, when taxpayer failed to respond to a notice of assessment issued by the District Director of Internal Revenue. (26 U.S.C. § 6321.) Under section 6322 of the Code, those liens were to continue until the underlying liability was satisfied or became "unenforceable by reason of lapse of time." (26 U.S.C. § 6322.) [6] The Government brought suit to recover judgment upon the liability underlying the assessments before the expiration of the

six-year statute of limitations upon the collection of an assessment. (26 U.S.C. § 6502(a).) The life of the liens was thereby extended beyond the initial six-year period. (Hector v. United States (5th Cir. 1958) 255 F.2d 84; United States v. Ettelson (7th Cir. 1947) 159 F.2d 193.) The 1961 judgment entered in the suit again extended the enforceability of the liability and thus the life of the liens. Although a lien based on that judgment is subject to state-created limitations (28 U.S.C. § 1962; Fed.R. Civ.Proc. 69(a)), the judgment itself is not subject to limitations and is enforceable at any time. (United States v. Ettelson, *supra*, 159 F.2d at 196; Investment & Securities Co. v. United States (9th Cir. 1944) 140 F.2d 894, 896; Plumb, "Federal Tax Collection and Lien Problems" (1958) 13 Tax L.Rev. 247, 250–51.)[7] The tax liens are merged neither into the judgment nor into the judgment liens; they continue to exist independently of either. United States v. Hodes, (2d Cir. 1966) 355 F.2d 746, cert. dismissed (1967) 386 U.S. 901, 87 S.Ct. 784, 17 L.Ed.2d 779.) The tax liens are enforceable at any time, because the underlying liability has been merged into the 1961 judgment and that liability cannot become "unenforceable by reason of lapse of time." (United States v. Ettelson, *supra*; Investment & Securities Co. v. United States, *supra*; Plumb, *supra*.)

■■■■ The United States is not subject to the defense of laches in enforcing its rights. (United States v. Sum-

---

6. We are dealing with § 6322 as it stood prior to amendment by the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, 80 Stat. 1146. Pursuant to § 114 of the Act, reproduced in the Historical Note to 26 U.S.C.A. § 6323, the Government in its brief offered to treat the appeal under either the old or the new § 6322 at the appellants' election. Appellants did not respond. Because the new section appears to have removed any merit from appellants' argument (*see* J. Mertens, Federal Income Taxation (1969) § 54.66.-28), we are applying the earlier version to the issues on this appeal.

7. Appellants' brief states: "When Federal statutes do not provide otherwise, state law will prevail respecting periods of limitation and enforcement of judgments rendered by a Federal court." This overlooks the established rule that a state statute of limitation cannot run against the United States unless a federal statute permits. United States v. Summerlin (1940) 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283; United States v. Rose (3d Cir. 1965) 346 F.2d 985, 990, cert. denied sub nom. Aetna Ins. Co. v. United States (1966) 382 U.S. 979, 86 S.Ct. 551, 15 L.Ed.2d 469.

merlin (1940) 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283.) No case has been made out by the appellants for the application of the doctrine of equitable estoppel, even if the doctrine were otherwise applicable to the Government.

The appellants claim that the assertion of the Government's lien against taxpayer's interest in the community is foreclosed by the recitation in the 1961 judgment that it was "individually only, and not against his marital community."

 Under Washington law a personal judgment against a married man is presumed to be against the community. (*E. g.*, La Framboise v. Schmidt (1953) 42 Wash.2d 198, 254 P.2d 485.) The purpose of the recitation was to make clear that the judgment was against the taxpayer for a separate, not a community, debt. No greater significance can be attributed to the recitation.

The interlocutory is affirmed, and the cause is remanded for further proceedings.