**J. William GALLUP, Plaintiff,**

v.

**UNITED STATES of America [1], Defendant.**

**Civ. No. 73-0-187.**

United States District Court, D. Nebraska.

April 16, 1973.

---

1. This action was originally filed by naming as defendants Richard Vinal and Lowell Harris, agents of the I.R.S. The Court has substituted the United States of America as the defendant, pursuant to 26 U.S.C.A. § 7426(e).

Carl I. Klekers, of Ralston, Neb., for plaintiff.

William K. Schaphorst, U. S. Atty. and Randall A. Rinquest, Asst. U. S. Atty., D. Neb., for defendant.

## MEMORANDUM DECISION

DENNEY, District Judge.

This matter comes before the Court for decision following a hearing upon plaintiff's application that the Court enter a preliminary injunction, restraining the Internal Revenue Service (hereafter I.R.S.) from selling a certain 1973 Cadillac automobile. Jurisdiction has been established pursuant to 26 U.S.C.A. § 7426.[2] This opinion shall constitute the Court's findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure.

Shortly before or on March 28, 1973, Joseph Thomas, a/k/a Joe Patterson, was arrested during a drug raid by local authorities and incarcerated in the Douglas County Jail, Omaha, Nebraska. Unable to post the bail set in the case, Thomas has remained incarcerated since that date. Thomas has recently been before this Court for aiding and abetting the distribution of heroin. Plaintiff is a local attorney who represented Thomas in that case and is representing Thomas in similar other prosecutions. On March 28, 1973, the Acting District I.R.S. Di-

rector, pursuant to the authority contained in 26 U.S.C.A. § 6851, determined that there was a threat that Thomas would act to conceal or remove his property. The Director therefore terminated Thomas' 1973 taxable year and an immediate assessment of $21,540.75 was made against Thomas for the period January 1, 1973 to March 28, 1973, in accordance with 26 U.S.C.A. § 6201.

On the night of March 28, 1973, the I.R.S. served Thomas in jail with notice of the termination, told Thomas that the amount of $21,540.75 was immediately due and payable, and demanded payment. In addition, the I.R.S. agents advised Thomas that the assessment created a tax lien in favor of the Government and levy would be made upon all property of Thomas, real or personal, tangible or intangible, in order to satisfy the assessment. Plaintiff was present during the service of notice by the I.R.S.

Either on that date or the next day, plaintiff talked to Thomas about the actions of the I.R.S. and as to how Thomas would pay the legal fees owed the plaintiff. It was agreed that plaintiff would purchase an automobile in which Thomas had an equity. The agreement was that the plaintiff would pay off the outstanding loan on the automobile and take Thomas' equity for the legal fees owed. The automobile was a 1973 Cadillac Fleetwood and had been sold on November 1, 1972, by West Omaha Auto Brokers, Inc., Omaha, Nebraska, to Milton Greenburg, Bernice Devers and Joseph Thomas. Milton Greenburg is one of the two owners of West Omaha Auto Brokers, Inc. He testified herein that his name appeared as a purchaser only because the finance company, Creditel Corporation, would not otherwise finance the $4,000 of the $10,920.24 purchase price remaining unpaid by Thomas because of the lack of a favorable credit standing by Thomas.[3]

---

2. Plaintiff's complaint fails to allege any jurisdictional basis for this suit. The Court will grant plaintiff leave to amend his complaint to allege jurisdiction as found by the Court.

3. The installment sales contract that was the basis of the financing arrangement provided for 12 payments of $360.02 each, commencing December 1, 1972, and continuing until paid. The annual per-

On November 7, 1972, a certificate of title was issued by the State of Nebraska for the vehicle, in the name of Milton J. Greenburg. The title was thereafter held in the possession of Creditel Corporation. During the period from November 1, 1972, when delivery was made by West Omaha Auto Brokers, Inc. to Bernice Devers and Joseph Thomas, to the date of Thomas' incarceration, the automobile was in the possession of Thomas. Milton Greenburg testified he has no interest in the automobile. Bernice Devers has not been made a party to this lawsuit.

On March 29, 1973, in accordance with the appropriate Nebraska statute, Neb.Rev.Stat. 52–1001(b) and federal statute, 26 U.S.C.A. § 6323(f), the I.R.S. filed notice of a tax lien in the amount of $21,540.75 with the Register of Deeds of Douglas County, Omaha, Nebraska.

On March 30, 1973, plaintiff, pursuant to the agreement with Thomas, went to Creditel Corporation and paid off the $2,700.00 remaining owed on the financing agreement and obtained possession of the title. Plaintiff took the title to Milton Greenburg, who endorsed it. Thereafter, plaintiff went to the Doug-las County Court House where, upon the expenditure of some $300 for sales, property tax, and other fees, a Certificate of Title was issued in plaintiff's name.

On April 3, 1973, without notice to or hearing for the plaintiff, I.R.S. agents went to plaintiff's residence while plaintiff was at work and towed the automobile away from plaintiff's driveway. The automobile has remained in the possession of the I.R.S. since that date.[4]

Later that same day, plaintiff filed the complaint in this lawsuit. Upon the posting of a property bond of twice the value of the automobile, this Court entered a temporary restraining order in this case, restraining the I.R.S. from selling or disposing of the automobile pending the outcome of the hearing on the preliminary injunction.

A tax lien generally arises on the date of the assessment, 26 U.S.C.A. § 6321, which herein would be March 28, 1973. However, Congress has provided that for that lien to be valid against a purchaser of the property, notice of the tax lien must be filed in accordance with state law.[5] 26 U.S.C.A. § 6323(a), (f). The

---

centage rate of interest was 14.46%. Thomas paid $1500 in cash and was credited with $5100 for a 1971 Cadillac trade-in towards the purchase price.

4. Plaintiff, in his complaint, alleged that he was deprived of possession of the vehicle without due process of law. Plaintiff originally sought as relief in this suit that he be restored to possession. However, plaintiff interlineated his complaint and seeks now only that the I.R.S. be enjoined from selling the automobile. The Court has the power to grant the relief sought pursuant to 26 U.S.C.A. § 7426, and thus does not need to reach the troublesome constitutional question presented. However, it should be noted that the Court is greatly disturbed by the summary procedures used by the I.R.S. to obtain possession of the vehicle. Whatever justification remains for these procedures, in view of Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 [1972], is seriously diluted where the property is no longer in the custody or control of the taxpayer but has passed under color of title to a solvent third party. Surely, the Phil-lips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 [1927], essential needs of the Government in collection of its revenues, can be secured without total disregard of the fundamental rights of the third party possessor of property to have notice and an opportunity to be heard before he is deprived of that possession.

5. Defendant contends that plaintiff may not take advantage of 26 U.S.C.A. § 6323 because he is not a purchaser within the meaning of 26 U.S.C.A. § 6323(h)(6), since he paid only $2700 for an automobile worth at least $8500. 26 U.S.C.A. § 6323 (h)(6) defines a purchaser as one who for adequate and full consideration acquires an interest in property which would be valid under local law. Nebraska has enacted the Uniform Commercial Code, which abrogates the common law rule that any antecedent debt will not provide present consideration. 6 Neb.Rev.Stat. § 1–201(44). Defendant has not contested that the value of plaintiff's legal services was at least the difference between the $2700 and the market value of the automobile.

filing of the notice of tax lien on March 29, 1973, was the requisite filing under applicable Nebraska law. Neb.Rev.Stat. § 52–1001(b). The interest of the I.R.S. was thus fully perfected and entitled to priority at least as of March 29, 1973.[6]

At the hearing, plaintiff testified that on March 30, 1973, when he purchased the automobile, he was fully aware that the I.R.S. had terminated the tax year of Thomas and had made the $21,540.75 assessment. Plaintiff stated, however, he had no actual knowledge that notice of the tax lien had been filed and had labored under the impression that so long as the automobile's title was clear he could beat the I.R.S. to the property and prevail in Court under Nebraska law.

■ Plaintiff's reliance on state law was misplaced. Although state law controls whether the taxpayer has property to which a federal tax lien can attach, the priority of the federal tax lien is a matter of federal law. *See*, e. g. United States v. Overman, 424 F.2d 1142 [9th Cir. 1970]. Plaintiff cannot be heard to contend that Thomas had no property interest in the automobile on March 29, 1973, the date the tax lien was perfected, since it is that interest that plaintiff contends he purchased on March 30, 1973. The tax lien is thus entitled to priority to that of plaintiff, unless plaintiff can come within the saving provision of 26 U.S.C.A. § 6323(b)(2), which provides:

> Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—
>
> (2) Motor vehicles.—With respect to a motor vehicle (as defined in subsection (h) (3)), as against a purchaser of such motor vehicle, if
>
> (A) at the time of the purchase such purchaser did not have actual notice or knowledge of the existence of such lien, and

> (B) before the purchaser obtains such notice or knowledge, he has acquired possession of such motor vehicle and has not thereafter relinquished possession of such motor vehicle to the seller or his agent.

■ As discussed above, on March 30, 1973, plaintiff had no actual knowledge that notice of the tax lien had been filed. However, 26 U.S.C.A. § 6323(b)(2) does not refer to actual knowledge of the filing of the notice of the tax lien, but requires instead that the purchaser be free of actual knowledge of the existence of the lien. Plaintiff was present when the I.R.S. told Thomas of the assessment and the existence of the lien and that himself of actual knowledge of the notice of the tax lien by not searching the records of the Register of Deeds prior levy would be made on all of Thomas' property. Plaintiff and Thomas later discussed the tax situation. Although plaintiff was successful in depriving to the purchase of the automobile, the Court finds that he had actual notice of the existence of the tax lien itself. Plaintiff is not entitled to the protection of 26 U.S.C.A. § 6323(b)(2).

Without more, the interest of plaintiff in the automobile would be entirely junior to that of the Government and, since the tax assessment far exceeds the value of the vehicle, plaintiff would have little hope of recovering the $2700 he paid, let alone his legal fees.

■ However, 26 U.S.C.A. § 6323(i) (2) also provides that:

> Where, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 or 6324.

Nebraska has recognized the established doctrine that where a purchaser, as part of the purchase price of property, discharges a specific encumbrance on that

---

6. The Court is not required to reach whether or not the priority of the tax lien upon filing of notice relates back to the March 28, 1973, date of the assessment to cut off intervening purchasers, since plaintiff did not purchase until March 30, 1973, and was subsequent in time.

property upon failure of title in the purchaser, the purchaser is subrogated to and equitably entitled to the amount of the encumbrance he has discharged. Betts v. Sims, 35 Neb. 840, 53 N.W. 1005 [1892]. The encumbrance that plaintiff discharged was that owing Creditel Corporation in the amount of $2700.00. As to the $2700.00, plaintiff will prevail over the Government.[7]

An order pursuant to this memorandum will be entered this date.

---

7. The Government has not contested the priority of the security interest of Creditel Corporation. Security interests in automobiles are treated separately and distinctly from all other security interests under Nebraska law. It could be argued that under Nebraska state law Creditel Corporation might not prevail over a subsequent purchaser or lien holder. *See* First Nat. Bank of Omaha v. Provident Finance Co., 176 Neb. 45, 125 N.W. 2d 78 [1963]. It does not, however, appear settled whether a tax lien would similarly fare. The Court is of the opinion that the Government cannot claim the benefits of Neb.Rev.Stat. § 60-110, Cum.Supp.1972, without the burden of conceding that its lien was also not noted on the vehicle's title as required by the statute, which would make both Creditel's and the Government's interests unperfected and Creditel would prevail as first in time. Moreover, the subrogation doctrine applied herein is of an equitable nature and the Court is of the opinion that the equities in this case dictate its application. Plaintiff still loses all his legal fees and the $300 he expended in licensing and titling the vehicle.