**UNITED STATES of America, Plaintiff,**

v.

**Joseph MANDEL et al., Defendants.**

**No. 73–998–Civ–JLK.**

United States District Court,
S. D. Florida,
Miami Division.

May 23, 1974.

Robert W. Rust, U. S. Atty., by Robert N. Reynolds, Asst. U. S. Atty., Miami, Fla., for plaintiff.

Sidney A. Soltz, Miami, Fla., for defendants Joseph Mandel and Carol Mandel.

Robert E. Kurtz, Miami, Fla., for defendant John Hancock Mut. Life Ins. Co.

Frank A. Lane, Miami, Fla., for Prudential Ins. Co.

Lawrence R. Metsch, Miami, Fla., for New York Life Ins. Co.

## SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

This cause came on for consideration upon the parties' cross-motions for summary judgment. The court, having considered the record and being fully advised in the premises, finds and concludes that summary judgment should be granted in favor of the government against each of the defendants.

The present suit was instituted by the United States, under 26 U.S.C. § 7403 (1970), to foreclose its tax assessment lien on the interests of Joseph Mandel and his wife, Carol, in a number of life insurance policies. The relevant facts are undisputed. On March 22, 1963, a delegate of the Secretary of the Treasury made a 100% penalty assessment against the defendant, Joseph Mandel, for various employment taxes in the amount of $18,248.49.[1] The notice of the lien was duly filed.[2] In June of the following year, the U. S. District Court for the Southern District of Florida entered a judgment in favor of the government against Mr. Mandel for a portion

1. The penalty assessment was made pursuant to 26 U.S.C. § 6672.

2. The initial notice of lien was filed on June 14, 1963. Consistent with the refiling of notice provisions of 26 U.S.C. § 6323(g), the notice was refiled on November 15, 1967 and September 28, 1968.

of the tax assessment, $9,896.67 plus interest. As is indicated by the unsatisfied 1964 judgment, Joseph Mandel's liability for the unpaid taxes remains outstanding.

■ Since the filing of the notice of lien and the entry of the judgment, Mr. Mandel has, at one time or another, been the owner of several life insurance policies, according to the terms of which he reserved the right to change the beneficiary designation. He is presently the owner of life insurance policy number 12–272–768 on which the defendant, New York Life Insurance Company (hereinafter "New York"), is the insurer.[3] In the past, he was the owner of life insurance policies, numbered 5237452, 2562554, and 3019163, on which the defendant, John Hancock Mutual Life Insurance Company (hereinafter "Hancock"), is the insurer. Mr. Mandel was also the owner of life insurance policy number 13–204–455 on which the defendant, Prudential Insurance Company of America (hereinafter "Prudential"), is the insurer. Mr. Mandel assigned the Hancock policies to his wife, Carol Mandel, on December 7, 1967; and, he assigned the Prudential policy to her on January 4, 1968. Each of the policies currently has cash surrender value.

Because there are no factual issues left to be resolved at trial, the case is ripe for summary judgment. *E. g.,*

Ranger Insurance Company v. Algie, 482 F.2d 861 (5th Cir. 1973). The legal questions presented concern: whether the government's tax assessment lien has been rendered "unenforceable by reason of lapse of time," as the phrase is employed in 26 U.S.C. § 6322; whether the tax assessment lien on Mr. Mandel's right to receive the cash surrender values of the Hancock and Prudential policies survived the assignment of these policies to Mrs. Mandel; and, whether the defendant insurers can be compelled to pay to the government the cash surrender values of the policies in the absence of both surrender of the policies and an election by the owner of the policies to receive the cash surrender values.

The resolution of the first issue turns on an interpretation of 26 U.S.C. §§ 6322[4] and 6502(a).[5] In Moyer v. Mathas, 458 F.2d 431 (5th Cir. 1972), the Fifth Circuit recently had the occasion to interpret these sections under circumstances far more aggravated than those confronting Mr. and Mrs. Mandel. There an assessment and notice of lien were filed against the delinquent taxpayer in 1949. Almost six years later, in 1955, the government brought suit in the Southern District of New York to reduce the assessments to judgment. While the government's suit was pending, the taxpayer sold part of her Florida property to a Mr. Moyer in 1958. In

3. Since 26 U.S.C. § 7403(b) requires the joinder of anyone having an interest in the property, the insurance companies have been joined as parties defendant. *See* United States v. Bess, 357 U.S. 51, n. 2, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958).

4. 26 U.S.C. § 6322 reads:
"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amounts so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."

5. 26 U.S.C. § 6502(a) reads:
"(a) Length of period.—Where the assessment of any tax imposed by this title has been made within the period of limita-

tion properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
(1) within 6 years after the assessment of the tax, or
(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6-year period (or, if there is a release of levy under section 6343 after such 6-year period, then before such release).
The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. The period provided by this subsection during which a tax may be collected by levy shall not be extended or curtailed by reason of a judgment against the taxpayer."

1962, the government obtained a default judgment for $106,000 of the assessment. Thereafter, Mr. Moyer began having his own problems with the local tax collector—he apparently failed to pay his state property taxes. In 1969, the Clerk of the Circuit Court for Volusia County, Florida, conducted two tax. deed sales of part of the property that Moyer acquired from the delinquent taxpayer. Because the Clerk paid a portion of the proceeds from the first sale to the government, and was about to make a similar payment out of the proceeds from the second sale, Mr. Moyer brought two suits. In one action, he sought to enjoin the Clerk to pay to him the funds the Clerk would otherwise have paid to the government; and, in the other, he sued for a refund of the money paid to the government after the first sale. The government counterclaimed with an action to foreclose the 1949 tax assessment lien. Not unexpectedly, Mr. Moyer asserted that the foreclosure counterclaim was time-barred. The district court did not agree, *Moyer v. Mathas*, 332 F.Supp. 357 (M.D.Fla. 1971), and the Fifth Circuit affirmed.

The appellate court reasoned that § 6322 states that the tax assessment lien "shall continue until the liablity for the amounts so assessed . . . becomes unenforceable by reason of lapse of time." The phrase, "by reason of lapse of time," was read in light of section 6502(a) which permits collection of the assessed tax "by a proceeding in court, but only if . . . the proceeding [is] begun within 6 years after the assessment of the tax." The court then held that the 1955 suit commenced in the Southern District of New York was "a proceeding in court" which satisfied the requirements of section 6502(a). Thus the government was not barred from maintaining its foreclosure action twenty years after the tax assessment lien arose.

■ The Fifth Circuit's holding in *Moyer* compels a similar result in the present case. Here, the government first brought suit in June of 1964, a year and a half after the assessment was made and the notice of lien was filed. Since that action was "a proceeding in court" well within the six year period, section 6502(a) does not prevent the government from succeeding in this suit to foreclose the 1963 tax assessment lien.

The defendants have argued that the 1963 lien was merged into the 1964 judgment. Thus the enforceability of the lien was extended only until 1971 because, according to Florida law,[6] the judgment was enforceable for seven years. The defendants would have the court conclude that since the present action was commenced in 1973, it was time-barred.

■■ However, the same merger argument was expressly rejected by the trial court in *Moyer*, 332 F.Supp. at 359, and implicitly rejected by the Fifth Circuit. It appears to be well settled that "tax assessment liens, unlike most liens under state law, continue to exist independently of the suit or judgment which has extended their existence." *United States v. Hodes*, 355 F.2d 746, 749 (2d Cir. 1966); *accord*, *United States v. Overman*, 424 F.2d 1142 (9th Cir. 1970). Since there is no merger, the tax assessment lien remains enforceable long after the period for bringing suit on the accompanying judgment has expired.

■ In determining whether the tax assessment lien survived the assignment of the Prudential and Hancock policies, the Supreme Court's decision in *United States v. Bess*, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958) provides the necessary guidance. The Court held that the insured's right to compel the insurance company to pay to him the cash surrender value of the life insurance policy was a property right to which the tax assessment lien attached. Moreover, "[t]he transfer of property subsequent to the attachment of the lien does not affect the lien . . . '[the proper-

---

6. Fla.Stat. § 95.11(2) (1973), F.S.A.

ty] passes cum onere.'" *Id.* at 57, 78 S.Ct. at 1058. Following the *Bess* rationale, the government's tax lien attached to Mr. Mandel's right to the cash surrender value of each of the Prudential, New York, and Hancock policies. The subsequent assignment of the Prudential and Hancock policies to Mrs. Mandel did not affect the lien: she received the encumbered right to demand the cash surrender value of each of the policies. United States v. Waxman, 205 F.Supp. 340 (N.D.Ohio 1962).

■■ The defendant insurers have also raised an issue as to whether they can be compelled to pay to the government the cash surrender value of a policy in the absence of both an election by the policy owner to demand the cash surrender value, and surrender of the policy. The insurers have apparently misconceived the nature of the government's suit. By foreclosing its lien on the owner's rights under the life insurance policy, the government is effectively exercising the policy owner's election to demand the cash surrender value. United States v. Metropolitan Life Insurance Co., 256 F.2d 17 (4th Cir. 1958); *see* United States v. Mitchell, 349 F.2d 94, 104 (5th Cir. 1965). As long as the foreclosure is considered an election, it matters not that the right to demand the cash surrender value is one of several options available to the owner. Thus the government, like the policy owner, can make the choice and compel the insurance company to pay the cash surrender value.

The insurers' concern for the surrender of the policies is misplaced. Surrender of the policies is not a prerequisite to either the existence or the foreclosure of the government's tax assessment lien on the owner's right to the cash surrender value. *See* United States v. Mitchell, *supra.* The insurers' concern undoubtedly springs from their desire to protect themselves insofar as. their future obligations under the policies may be concerned. However, the judgment of the court provides ample protection.

United States v. Metropolitan Life Insurance Co., *supra.*

To summarize briefly, the present foreclosure action is not untimely. The tax assessment lien attached to Mr. Mandel's right to demand the cash surrender value of each of the New York, Prudential, and Hancock policies. When Mr. Mandel assigned the Hancock and Prudential policies to Mrs. Mandel, she received his rights under these policies subject to the government's lien. Finally, the government is entitled to foreclose its lien even though Mr. and Mrs. Mandel have not yet either surrendered the policies, or elected to demand the cash surrender values of the policies.

The government shall prepare an appropriate final judgment. It is, therefore

Ordered and adjudged that the government's motion for summary judgment against each of the defendants be and the same is hereby granted.