**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**BANK OF CELINA,
Defendant-Appellant.**

No. 85–5050.

United States Court of Appeals,
Sixth Circuit.

Feb. 25, 1986.

---

Mark H. Westlake, Nashville, Tenn., for defendant-appellant.

Michael L. Paup, Glenn L. Archer, Jr., Tax Div., Dept. of Justice, Appellate Section, Washington, D.C., Carleton D. Powell, Steven W. Parks, argued, James C. Thomason, III, Asst. U.S. Atty., Nashville, Tenn., for plaintiff-appellee.

Before CONTIE and MILBURN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CONTIE, Circuit Judge.

This is an appeal from the district court's order awarding post-judgment interest to the United States at a rate established by 26 U.S.C. § 6621 and measured from the date of the original judgment, March 31, 1982, to the date payment was actually made. Appellant, Bank of Celina, argues that the interest should have been calculated pursuant to 28 U.S.C. § 1961 (1948), measured from the date of the modified judgment, May 20, 1982, to the date payment was deposited by the clerk of the district court to the United States Treasury account, March 16, 1984.

I.

This case has appeared before this court on a previous occasion, *United States v. Bank of Celina*, 721 F.2d 163 (6th Cir. 1983), at which time we upheld the district court's ruling that the United States' tax lien, arising out of RBS Sportswear, Inc.'s failure to pay federal employment taxes, attached to funds that had been deposited with the Bank of Celina.[1] Since the tax lien continued to encumber the funds, we affirmed the district court's order award-ing the United States an amount totaling $56,316.98.[2]

The Bank of Celina issued a check in the amount of $65,500 which was deposited with the district court on March 12, 1984. This payment was intended to represent the judgment amount plus $9,138.02 interest. The Bank states that this is $1,077.70 less than the amount due, calculated from May 20, 1982, the date of the modified judgment, to March 16, 1984, the date this check was deposited by the clerk of the district court into the United States Treasury account at the Federal Reserve Bank, Nashville Branch. The interest was calculated at a rate of ten percent as required by state law. *See* Tenn.Code Ann. § 47–14–121.[3] Payment was received by the United States Department of Justice on December 27, 1984 in the form of a United States Treasury check.

Although inquiries had been made, official confirmation of this payment was never received by the Bank. However, the United States sent a letter to the Bank, dated July 10, 1984, demanding payment of $78,816.59 which represented the judgment amount plus $22,499.61 in post-judgment interest.

On July 26, 1984, Bank of Celina filed a motion with the district court to confirm the amount of payment made and the total amount due. The Bank requested the court find that it owed $1,077.70 in unpaid interest, calculating interest in accordance with 28 U.S.C. § 1961. The United States responded to this motion on October 9, 1984, arguing that interest should be calculated in accordance with 26 U.S.C. § 6621 pursuant to 28 U.S.C. § 1961(c)(1), and further stated that the $22,499.61 figure represented accrued interest from the initial date of judgment, March 31, 1984, to July 21, 1984.

---

1. Although the Bank had applied these funds to the payment of RBS's loans then due, convert-ing the funds to the Bank's property under Tennessee law, the tax lien had attached while the funds were the property of RBS.

2. The district court's original order on March 31, 1982 required payment of $57,132.01. How-ever, this judgment was amended by a second order on May 20, 1982 to reflect prior collection.

3. 28 U.S.C. § 1961, prior to the 1982 revisions, required that the rate of interest be established under state law.

The district court did not draft an order but merely adopted the Government's response to the Bank's motion on October 29, 1984. The court therefore ordered that the Bank pay $56,316.98, plus interest pursuant to 26 U.S.C. § 6621. The court did not state whether $78,816.59 was the total amount due or whether interest had continued to accrue. Further, the court did not acknowledge that $65,500 had been paid.[4]

## II.

### A.

■ The district court held that interest should be calculated under 26 U.S.C. § 6621 pursuant to the revised version of section 1961, 28 U.S.C. § 1961(c)(1) (1982). Section 1961(c)(1) provides, *inter alia*, that the interest rate for Internal Revenue tax cases shall be established under 26 U.S.C. § 6621. The appellant asserts, and the United States agrees, that the district court erred by relying on this revised version of section 1961 since it was not in effect when the original judgment was entered. Therefore, the issue before this court is whether the district court's order can be upheld despite the erroneous reliance upon section 1961(c)(1)[5]—whether section 6621 nonetheless controls the outcome in this case.

26 U.S.C. § 6601(a) provides:

If any amount of tax imposed by this title ... is not paid on or before the last date prescribed for payment, interest on such amount at an annual rate established under section 6621 shall be paid for the period from such last date to the date paid.[6]

Section 6621 states that the rate of interest under this section "shall be such adjusted rate as is established by the Secretary...."

The tax liability in this case arose from nonpayment of employment taxes, or taxes "imposed by this title" within the meaning of section 6601(a).[7] It is clear that interest would have accrued on RBS's deficiencies pursuant to section 6621 prior to the judgment, which was undoubtedly included as part of the district court's judgment. However, the question is whether section 6621, prior to the 1982 revisions to section 1961, continued to be applicable once a judgment has been rendered.

The Bank argues that 28 U.S.C. § 1961 was applicable because that was the only provision that established a rate for *post-judgment* interest. Section 1961, prior to revision, provided:

Interest shall be allowed on any money judgment in a civil case recovered in district court.... Such interest shall be calculated from the date of the entry of the judgment, at the rate allowed by State law.

Both parties agree that the annual rate of interest under state law is ten percent. Tenn.Code Ann. § 47–14–121. The revised version of section 1961 eliminates the reference to state law for computing post-judgment interest, 28 U.S.C. § 1961(a), and expressly exempts federal tax cases. 28 U.S.C. § 1961(c)(1). The Bank asserts that the section 1961(c)(1) tax case exemption would have been unnecessary if post-judgment interest had always been computed pursuant to 26 U.S.C. § 6621. If the tax assessments had never been reduced to a money judgment, then interest would have

---

**4.** The Bank raises as its first issue that payment of the $65,500 should be acknowledged. The United States concedes that this amount has been paid and that it will be credited to the total amount due.

**5.** If a lower court's judgment is proper this court can affirm, even if the court's decision was based upon an incorrect application of the law. *Dandridge v. Williams,* 397 U.S. 471, 475–76 n. 6, 90 S.Ct. 1153, 1156–57 n. 6, 25 L.Ed.2d 491 (1970); *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937).

**6.** "Last date" is given several definitions under § 6601(b). Section 6601(b)(4) specifies that the last date is "the date the liability for tax arises...."

**7.** The Bank argues that this case was not an Internal Revenue tax case *as to the Bank,* but was merely a lien priority case. This argument is unpersuasive, especially in light of this court's previous decision. The court never discussed priorities, and liability arose entirely from the tax code.

continued to accrue in accordance with section 6621.

The Government, on the other hand, argues that since a tax lien, unlike other liens, does not merge with the judgment, the interest on the tax liability would continue to accrue at the same rate that it accrued before judgment. The Government's initial assertion is well settled:

[T]ax assessment liens, unlike most liens under state law, continue to exist independently of the suit or judgment which has extended their existence.... The assessment lien does not merge into the judgment, as would an attachment lien, for example; the judgment is merely one way in which the underlying tax liability remains enforceable, and therefore the judgment serves merely as a measuring rod for the life of the lien.

*United States v. Hodes*, 355 F.2d 746, 749 (2d Cir.1966), *cert. dismissed*, 386 U.S. 901, 87 S.Ct. 784, 17 L.Ed.2d 779 (1967). *See also United States v. Overman*, 424 F.2d 1142, 1147 (9th Cir.1970); *United States v. Mandel*, 377 F.Supp. 1274, 1277 (S.D.Fla. 1974). These cases did not focus on the issue of interest. Rather, they focused on whether the tax lien had become "unenforceable by reason of lapse of time" under 26 U.S.C. § 6321;[8] whether a tax lien had lapsed or whether its enforceability was extended by reason of the judgment.[9] These cases do not provide concrete support for the Government's position because the issue before this court is the rate of interest on the underlying obligation, not the enforceability of a tax lien. In fact, *Overman* noted that even though the *tax lien* had not merged with the judgment, the *"underlying liability* has been merged into the ... judgment...." 424 F.2d at 1147. These cases actually support the Bank's position. Even though the tax lien has an independent existence from a judgment, the underlying obligation merges with that judgment.

We agree with the Bank that a strong indication of the correct result in this case derives from the amendment to section 1961. It is a well-known tenet of statutory construction that each statutory provision should be given meaning. An amendment to section 1961 exempting Internal Revenue cases would not have been necessary if post-judgment interest had not been previously calculated under section 1961. We are doubtful that courts had a choice as to which section applied. The difference in liability under the two sections is considerable, and a choice would have resulted in inconsistent results. Further, there has always been a distinction between pre-judgment and post-judgment interest, as well as a distinction between a tax lien and an underlying obligation. Section 1961 was designed to establish the post-judgment interest rate in civil cases; since tax cases are civil cases, we hold that section 1961 is applicable to the facts in this case. *See, e.g., Kotsopoulos v. Asturia Shipping Co.,* 467 F.2d 91 (2d Cir.1972) (admiralty cases are "civil cases" for the purpose of assessing post-judgment interest).

### B.

■ We must next determine which dates control the interest calculations. The Bank argues that interest should start to run on the date of the modified judgment, rather than the initial judgment, because that was the "final judgment." We find this argument unpersuasive. It is clear that when a judgment is modified on appeal, interest accrues from the date of the district court's judgment rather than the appellate court's judgment. *Mt. Hood Stages, Inc. v. Greyhound Corp.,* 616 F.2d 394, 407 (9th Cir.), *cert. denied,* 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980); *Perkins v. Standard Oil Co.,* 487 F.2d 672, 676 (9th Cir.1973); *United States v. Michael Schiavone & Sons, Inc.,* 450 F.2d 875, 876–77 (1st Cir.1971). The result should be no different when the district court modifies its own judgment, since the underlying rationale for the rule is that the date of the original judgment is controlling

---

**8.** All these cases arose because a statute of limitations had run.

**9.** In *Mandel,* the question was whether the tax lien was enforceable even though the time to bring suit on the judgment had expired.

because that is when the correct award *should have been* entered. The fact that a district court's judgment was modified does not result in an entirely new judgment. Therefore, we hold that interest began to accrue on the date of the original judgment.

Our final task is to determine when the accrual of interest on Bank of Celina's obligation must end. The Government argues that interest continues to accrue until the amount due is actually in the "hands" of the Government, rather than when the money is deposited with the district court. Under this rationale, interest would have accrued until December 27, 1984 when it reached the Department of Justice. The Government cites *United States v. Los Angeles Soap Co.*, 153 F.2d 320 (9th Cir.), *cert. denied*, 328 U.S. 848, 66 S.Ct. 1120, 90 L.Ed. 1621 (1946) in support of its position. That case is not controlling here, however, because the funds in *Los Angeles Soap* had merely been deposited with the district court during the course of the legal proceedings. Since judgment had not been rendered in that case, liability of the payor had not been established. In contrast, liability had been firmly established in the instant case and payment had been made in satisfaction of that judgment.

Further, it appears that the Department of Justice had full control over when it accessed these funds since the Bank allegedly was never contacted and no hearing was conducted before these funds were extracted. It would place an undue burden on taxpayers if interest were to accrue for an indefinite period of time after payment to a district court—especially in light of the efforts taken by the Bank in this case to receive confirmation of payment. Therefore, interest should be calculated to March 16, 1984, the date the funds were deposited into the United States Treasury account.

The district court's order is accordingly REVERSED, and this case is REMANDED for the calculation of interest pursuant to 28 U.S.C. § 1961 (1948) from March 31, 1982 to March 16, 1984. Payment of $65,-500 is to be credited to the Bank.

CELEBREZZE, Senior Circuit Judge, respectfully dissenting.

The majority holds that interest on any judgment obtained prior to October 1, 1982 on a tax lien is calculated pursuant to state law, 28 U.S.C. § 1961 (1976), *amended by* 28 U.S.C. § 1961(c)(1) (1982). Since I believe that this result improperly alters the government's right to enforce a federal tax lien, I respectfully dissent.

A review of the statutory framework surrounding federal tax liens is critical to a proper understanding of this case. If after a "demand" a taxpayer neglects or refuses to pay any tax upon which he is liable, a tax lien arises in the government's favor upon all of the taxpayer's property. I.R.C. § 6321 (1982). The tax lien includes interest, *id.*, which is computed pursuant to Section 6621, I.R.C. § 6621 (1982). I.R.C. § 6601(a) (1982). Thus, up until the time a judgment is entered upon a tax lien interest accrues according to Section 6621.

In order to prevent a tax lien from becoming unenforceable "by reason of lapse of time," I.R.C. § 6322 (1982), the government must bring "a proceeding in court" within six years from the time of assessment, I.R.C. § 6502(a)(1) (1982). *E.g., Moyer v. Mathas*, 458 F.2d 431, 433–34 (5th Cir.1972). The judgment "merely confirms the validity of the lien arising out of the tax assessment." H.R.Rep. No. 1884, 89th Cong., 2d Sess. 31 (1966); S.Rep. No. 1708, 89th Cong., 2d Sess. 32 (1966), 1966 U.S. Code Cong. & Ad. News 3722, 3754. The "tax lien is not merged into a judgment on the assessed tax liability." S.Rep. No. 1708, *supra*, at 32; H.R.Rep. No. 1884, *supra* at 31, 1966, U.S.Code Cong. & Ad. News 3754. Rather, "the judgment is merely one way in which the underlying tax liability remains enforceable, and therefore the judgment serves merely as a measuring rod for the life of the lien." *United States v. Hodes*, 355 F.2d 746, 749 (2d Cir.1966), *cert. dismissed*, 386 U.S. 901, 87 S.Ct. 784, 17 L.Ed.2d 779 (1967); *see United States v. Weintraub*, 613 F.2d 612, 620–21 & n. 30 (6th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980) ("There is no time limit whatsoever

on an action to enforce a timely filed levy or judgment obtained in a timely filed court proceeding."). Accordingly, a judgment on a tax lien serves to confirm the validity of the tax lien and to extend the limitations period on the lien. The majority, however, also holds that the obtaining of a judgment relegates the government to the post-judgment interest provided by state law. With this, I am unable to agree.

The majority's expansive view of the effect of a judgment on a tax lien conflicts with Congress' intent in passing the Tax Lien Act of 1966. Congress amended Section 6322 to ensure that "entry of a judgment confirming an assessed tax liability [would] not cut back on the rights of the Government." S.Rep. No. 1708, *supra*, at 32; H.R.Rep. No. 1884, *supra*, at 31, 1966 U.S.Code Cong. & Ad. News 3754. Specifically, "the Government's right to collect taxes due by administrative levy is neither curtailed nor expanded by the judgment." H.R.Rep. No. 1884, *supra*, at 31; S.Rep. No. 1708, *supra*, at 33, 1966 U.S.Code Cong. & Ad. News 3754. The rate of post-judgment interest under state law, however, will often vary substantially from that provided by Section 6621. Hence, under the majority's approach, the government will rarely be in the same position it held before a judgment was obtained; the government will either gain or lose substantial amounts of money depending upon the difference between the rate of interest under state law and under Section 6621. In this particular case, for example, the majority's decision cost the government over $10,000 in interest. In my view, such a result improperly curtails the government's rights under the tax lien.

Also, in cases like the one at bar in which the rate of interest under Section 6621 exceeds that under state law, the majority's decision has the effect of rewarding dilatory behavior. Since in these situations the obtaining of the judgment relegates the government to a lower interest rate, the government has lost money by bringing prompt judicial proceedings. I do not believe that the government should be penalized for obtaining prompt judicial confirmation of the validity of a tax lien.

Finally, I have difficulty with the majority's statement that "[e]ven though the tax lien has an independent existence from a judgment, the underlying obligation merges with that judgment." In my view, since a tax lien merely represents a person's tax liability, I.R.C. § 6321 (1982), if the taxpayer's liability merges with the judgment, as the majority holds, the tax lien is rendered nugatory. Ostensibly, the majority may be holding that two liabilities exist in this case: an "underlying liability" which merges with the judgment and a general liability represented by the tax lien. Yet, since "[b]oth the judgment and the lien arise out of the same tax liability," S.Rep. No. 1708, *supra*, at 32; H.R.Rep. No. 1884, *supra*, at 31, 1966 U.S.Code Cong. & Ad. News 3754, I see no reason why the liability represented by the tax lien should be different from that represented by the judgment. Despite the foregoing reasons for limiting the effect of tax lien judgments, the majority supports its position relying upon the Ninth Circuit's opinion in *United States v. Overman*, 424 F.2d 1142, 1147 (9th Cir.1970), the 1982 amendment to Section 1961, the traditional distinction between pre- and post-judgment interest, and the fact that tax cases are civil cases. I will consider each of these in turn.

The merger dictum in *Overman*, relied upon by the majority, was derived from the prior Ninth Circuit decision in *Investment & Securities Co. v. United States*, 140 F.2d 894, 896 (9th Cir.1944). The issue presented in *Investment & Securities* was whether the statute of limitations had run on the judgment obtained on a tax lien. *Id.* at 896. The court properly rejected this contention reasoning:

There is no federal statutory provision as to a period of limitations on this judgment; it follows that in the absence of such a limitation a tax can be collected at any time; therefore, the *liability of the tax now merged in the judgment* has not become unenforcible [sic] by reason of lapse of time.

*Id.* at 896 (emphasis added). Viewed in context, I believe that the *Investment & Securities* court's statement that the liabili-

ty merged into the judgment merely indicates that the liability represented by a tax lien can be enforced by execution on the judgment. This conclusion is supported by the fact that *Investment & Securities* concerned the enforcement of a judgment—not the tax lien. *Id.* at 895; Plumb, *Federal Tax Lien Problems*, 13 Tax L.Rev. 237, 251 n. 23 (1957–58). Moreover, interpreting the merger language as the majority does creates a conflict between the Ninth and Second Circuits. *Compare Investment Securities,* 140 F.2d at 896 (underlying liability merges) *and Overman,* 424 F.2d at 1147 (underlying liability merges) *with Hodes,* 355 F.2d at 749 (judgment merely extends life of tax lien). I therefore disagree with the majority's interpretation of the *Overman* dictum.

The majority places significant reliance upon the 1982 amendment to Section 1961 which explicitly exempts from its coverage "any judgment of any court with respect to any internal revenue tax case." 28 U.S.C. § 1961(c)(1) (1982). This amendment, according to the majority, would have been unnecessary if post-judgment interest had not previously been calculated under Section 1961. A careful review of the legislative history significantly undercuts the majority's position.

Section 1961 was amended to create "a realistic and nationally [sic] rate of interest on judgments in the Federal courts." S.Rep. No. 275, 97th Cong., 1st Sess. 30, *reprinted in* 1982 U.S.Code Cong. & Ad. News 11, 40. The Senate bill sought to accomplish this by making the interest rate under Section 6621 applicable to all judgments. S. 1700, 97th Cong., 1st Sess. § 302(a)(2) (1981). The legislative history does not indicate why the proposed Senate amendment was not adopted or why Congress opted for the current version of Section 1961(a), which uses the yield rate of Treasury bills in determining the post-judgment interest rate, *see* 28 U.S.C. § 1961(a) (1982). Nevertheless, the exception clause must be read in light of Congress' belief that the obtaining of a judgment on a tax lien does not affect the government's rights under the lien. S.Rep. No. 1708, *supra,* 32–33; H.R.Rep. 1884, *supra,* at

30–31. Since the 1982 amendment reaffirms Congress' view that a judgment does not affect the government's rights under a tax lien, the amendment should not be interpreted as changing the existing law. Moreover, if Congress intended to change the law, I believe that some mention of this would have been made in the legislative history. Accordingly, I find the majority's reliance upon the 1982 amendment to Section 1961 unpersuasive.

The majority next points out that a distinction has always been made between pre- and post-judgment interest. No case, however, has been cited by either party and I have been unable in my research to find any case distinguishing between pre- and post-judgment interest in the tax lien context. Further, such a distinction undermines Congress' desire that a judgment have no effect on the tax lien. H.R.Rep. No. 1884, *supra,* at 31; Sen.Rep. No. 1708, *supra,* at 33. Consequently, the historical distinction between pre- and post-judgment interest is irrelevant to this case.

Finally, the majority argues that since Section 1961 applies to all "civil cases" and since tax cases are civil cases, Section 1961 must be applied. The application of Section 1961 to all types of claims is justified, because "[o]nce a claim is reduced to a judgment, the original claim is extinguished and merged into the judgment.... A single rule should govern interest on any such debt, the nature of the original claim having become irrelevant under the doctrine of merger." *Kotsopoulos v. Asturia Shipping Co.,* 467 F.2d 91, 95 (2d Cir.1972); *see* Restatement (Second) of Judgments § 17(1), comment a (1980). A "judgment" on a federal tax lien, however, does not have the same effect as a judgment in a civil case; the doctrine of merger is inapplicable. In fact, Congress has emphasized that judgments on federal tax liens are not to be treated like other civil judgments. S.Rep. No. 1708, *supra,* 32–33; H.R.Rep. No. 1884, *supra,* 30–31. Due to the limited effect which a judgment on a tax lien has and Congress' intent to treat judgments on tax liens differently from other judgments, I do not believe that a "judgment on a

federal tax lien is a "judgment" within the meaning of Section 1961.

For the foregoing reasons, I would affirm the district court's holding that the interest in this case accrues at the rate specified by Section 6621.