**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

Charles **HODES**, Bess Berkowitz, Mid-City Park View Apartments, Inc., and Jefferson County Savings Bank, Defendants-Appellees,

Dale Kaiser, Evalyn Kaiser, 330 East 77th Street Corp., 77 Holding Corporation, 330 East 77th Street Associates, Sterling Investment Corp. and Sea-Ways Shipping Corporation, Defendants.

No. 95, Docket 29784.

United States Court of Appeals
Second Circuit.

Argued Oct. 8, 1965.

Decided Feb. 8, 1966.

Hays, Circuit Judge, dissented.

Dawnald R. Henderson, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, and Arthur S. Olick, Asst. U. S. Atty., New York City, on the brief), for plaintiff-appellant.

Martin Schlesinger, New York City, for appellee Mid-City Park View Apartments, Inc.

Samuel Kirschenbaum, Dreyer & Traub, Brooklyn, N. Y., for appellees

Charles Hodes, Bess Berkowitz and Jefferson County Savings Bank.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

LUMBARD, Chief Judge.

The United States appeals from an order of the District Court for the Southern District of New York which denied its motion for summary judgment and granted summary judgment to Charles Hodes, Bess Berkowitz, Mid-City Park View Apartments, Inc., and Jefferson County Savings Bank, the appellees. The question presented is whether federal tax assessment liens are enforceable against New York County real property which was formerly owned by the taxpayer, Dale Kaiser. Notice of the liens was filed in the appropriate New York registry, but the liens have lapsed unless extended by a 1958 federal judgment against the taxpayer. Appellees are the property's present owner and two mortgagees; their interests were perfected after the notice of lien was filed but before the judgment was docketed as required by New York law. The judgment below is reversed with instructions to enter summary judgment for the United States.

The facts are undisputed. From June 21, 1949 to October 17, 1951, the District Director of Internal Revenue made federal withholding tax assessments totaling $5,751.18 against Kaiser. The bulk of these assessments remain unsatisfied. To protect the government's lien "upon all property and rights to property, whether real or personal, belonging to" Kaiser,[1] the United States filed a Notice of Lien with the Register of the City of New York in New York County on July 19, 1955.[2]

---

1. Internal Revenue Code of 1954 § 6321 [hereinafter cited as I.R.C.]. The lien arises at the time the assessment is made and continues "until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time." I.R.C. § 6322.

2. I.R.C. § 6323(a) (1) provides that the Notice of Lien shall be filed in the office designated by the State in which the property is situated; unless notice is filed, the lien "shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor." For New York City real

In November 1957, Kaiser purchased the realty in question, which is located in New York County. In February 1958, the government brought suit in the District Court for the Southern District of New York to reduce the aforesaid assessments to judgment; this suit was timely because Kaiser had signed a series of tax collection waiver agreements in 1956 and 1957 extending the period in which the assessments could be collected until December 31, 1959. I.R.C. § 6502(a). In May 1958, judgment was entered for the government in the amount of $8,642.25 (including interest), of which $8,511.90 remains unsatisfied.

In July 1959, after the property had been transferred to a corporation wholly owned by Kaiser and his wife, appellee Jefferson County Savings Bank acquired a first mortgage interest. The mortgage was immediately recorded. In January 1961, after a series of mesne conveyances, appellees Hodes and Berkowitz acquired a second mortgage interest, which mortgage was also recorded. On May 1, 1962, the property was conveyed to appellee Mid-City Park View Apartments, Inc., the present record holder. The government does not question the bona fides of any of these transactions.

During this period, the District Director had slept at his guns. In August 1959, an additional waiver agreement was signed with Kaiser extending the period of collection to December 31, 1961. But no further action was taken until February 1963 when the government's 1958 judgment was docketed with the Clerk of New York County.

██ Under New York law, a federal judgment must be docketed with the office of the clerk of a county before it obtains the status of a judgment lien on the judgment debtor's real property in that county. C.P.L.R. § 5018(b). Since Congress has made this statute applicable in determining the rights of a federal

judgment creditor, 28 U.S.C. § 1962, the government's rights to the property in question arising out of its 1958 judgment are subordinate to those of appellees, who obtained their respective mortgage interests and title before the judgment was docketed. See C.P.L.R. § 5203(a). Therefore, in December 1964, the government instituted this action to foreclose against this property its assessment liens, notice of which had been properly filed in 1955.

Appellees contend that the assessment liens merged into the government's 1958 judgment; since the government is therefore relegated to its rights under the judgment, its interest is subordinate under New York law to the appellee's rights. Judge Metzner decided against the government on a narrower ground. He held that while the judgment, if docketed, would have extended the life of the liens, the government cannot prevail here because the appellees are entitled to the same protection against an undocketed judgment as against an undocketed lien. We disagree.

██ There is no specific time limitation on the life of an assessment lien; under I.R.C. § 6322,[3] the lien, once valid, survives so long as the underlying liability for the tax is enforceable. Under I.R.C. § 6502(a), the tax assessed may be collected by levy or by a proceeding in court which is begun within six years of the assessment or prior to the expiration of a timely tax collection waiver agreement. This being so, a tax collection waiver agreement *or* the institution of a suit to enforce the lien or the tax liability extends the life of an assessment lien beyond the normal six-year period. See United States v. Ettelson, 159 F.2d 193 (7 Cir. 1947); United States v. Herman, 186 F.Supp. 98 (S.D.N.Y.1960); United States v. Diamond, 142 F.Supp. 441 (S.D.N.Y.1956). And a number of courts have held that the lien is also extended by a judgment against the tax-

property, New York requires that a notice of liens for taxes payable to the United States be filed with the Register of New York City in the appropriate county.

N.Y. Lien Law § 240(1) (McKinney'r Consol.Laws, c. 33, 1965 Supp.).

3. See note 1 supra.

payer. See Investment & Sec. Co. v. United States, 140 F.2d 894 (9 Cir. 1944); United States v. Birns, 223 F.Supp. 94 (N.D.Ohio 1963); United States v. Saslavsky, 160 F.Supp. 883 (S.D.N.Y.1957).

 From these cases and the statutory language, it seems clear that tax assessment liens, unlike most liens under state law, continue to exist independently of the suit or judgment which has extended their existence. See Plumb, Federal Tax Collection and Lien Problems, 13 Tax L.Rev. 247, 250–51 (1958). The assessment lien does not merge into the judgment, as would an attachment lien, for example; the judgment is merely one way in which the underlying tax liability remains enforceable, and therefore the judgment serves merely as a measuring rod for the life of the lien. Thus, in United States v. Birns, supra, the government had obtained a judgment and had docketed it as required under Ohio law. However, under Ohio law even a prior docketed judgment could not have gained priority over the particular mortgagee in question. Nevertheless, the court held that the government's assessment lien retained independent force when extended by the judgment; since the priority of an assessment lien is a matter of federal law, see United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1954), the government prevailed.

 Although permitting the government to foreclose its assessment liens against this property may lessen the Commissioner's incentive to docket federal judgments as required by 28 U.S.C. § 1962, we think that our decision is consistent with the intent of Congress. The purpose behind I.R.C. § 6323(a) (1),

which requires the filing of a Notice of Lien, was to meet the harsh effect of cases holding that a secret tax lien was good against a subsequent bona fide purchaser. Compare United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705 (1893). On the other hand, 28 U.S.C. § 1962, which requires the docketing of a federal judgment according to state law, merely conforms with the congressional policy that the execution of federal judgments shall be done according to state law. See Fed.R.Civ.Proc. 69(a). There is no indication that Congress intended through Section 1962 to disturb its statutory scheme for the effective collection of taxes, a scheme which on its face gives no indication that an assessment lien is to merge into the judgment obtained in a suit to collect the underlying assessment.[4]

In arriving at this interpretation of these statutes, we are not unmindful of the equities involved. The dissenting opinion of Judge Hays implies that our decision may create a trap for the unwary if a long-outstanding assessment lien is extended on the basis of an undocketed federal judgment. We disagree. We believe that the circumstances which flow from our result are not inequitable. In the first place, a contrary decision requiring the government to docket its judgment would not significantly ease the burdens on a title searcher. There is no requirement that a notice of tax collection waiver agreement or of the *institution* of an action to collect the assessment be filed. Therefore, one who discovers an assessment lien more than six years old cannot assume it has lapsed if no judgment has been docketed. In this case, for instance, the unfiled waiver agreements admittedly extended the pe-

---

4. For example, I.R.C. § 6331 provides that the Secretary or his delegate may collect the tax by levy upon all property "belonging" to the taxpayer or "on which there is a lien." Such summary administrative seizure is a potent alternative to the Commissioner's power to authorize suits to foreclose a tax lien or collect an assessment, I.R.C. § 7403(a). Retaining the power to collect by levy may be one

reason why "the Government also sometimes brings collection suits, not for the purpose of reaching any particular property, but simply to extend the duration of the tax lien by reducing the claim to judgment." Plumb, supra p. 749, at p. 280. No reasons have been advanced why this policy is undesirable or why the life of assessment liens should be curtailed.

riod of collection, and hence the liens, four-to-six years beyond the normal six-year period.

More important, there is no question in this case of a purchaser receiving no notice of the government's possible rights. The Notice of Lien is filed alphabetically according to the taxpayer's name with the appropriate county official, cf. United States v. Herman, supra, and a proper title search will uncover any such liens outstanding as well as any docketed federal judgments. The Commissioner has statutory authority, which is utilized upon request as a matter of course, to file a release of lien when the tax liability has been satisfied or becomes unenforceable as a matter of law. I.R.C. § 6325(a) (1). Moreover, a purchaser who discovers a lien which may or may not have lapsed can always write the District Director to discover whether the lien has been extended beyond six years by subsequent waivers or litigation. We are unwilling to place upon the Commissioner the cumulative administrative burden of docketing all judgments as well as notices of liens when taxpayers and purchasers are given adequate warning by the Notice of Lien and when the release of lien, a statutory creation, provides a simple means for clarifying a cloudy title.

In the case at bar, it appears that appellees made no title search whatsoever. The assessment liens in question arose about 12 years prior to the time when appellees acquired their interests. This is not a sufficient period to lull a prudent purchaser into thinking that the liens must have lapsed. Compare United States v. Birns, supra (11 years).

The judgment is reversed and the case remanded with instructions that the District Court enter summary judgment for the plaintiff United States.

HAYS, Circuit Judge (dissenting).

During the period from June 13, 1949 to October 17, 1951, the Internal Revenue Service made assessments against taxpayer Kaiser for unpaid withholding taxes. On July 19, 1955, the government filed a Notice of Lien, pursuant to I.R.C. § 6323(a) (1). On May 29, 1958, judgment was entered in favor of the government in its suit to reduce the assessment to judgment. This judgment was not docketed until February, 1963. The government concedes that appellees obtained their security interests prior to the docketing of the judgment. A federal judgment must be docketed before it becomes a lien on a debtor's real property. New York Civil Practice Law and Rules § 5018(b). It is for this reason that the government now sues not on its judgment but on its assessment lien.

An assessment lien survives only so long as the liability for the tax does not become "unenforceable by reason of lapse of time." I.R.C. § 6322. I.R.C. § 6502 (a) determines the period of enforceability and reads:

Collection after assessment

(a) Length of period.—

Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

(1) within 6 years after the assessment of the tax, or

(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6-year period (or, if there is a release of levy under section 6343 after such such 6-year period, then before such release).

The majority does not refer us to any section of the Code under which an assessment lien is extended because a judgment has been obtained against the taxpayer. Without a statutory citation, and without any exposition to justify their step, the majority, reversing the court below, holds that a lien is extended by a judgment and continues "to exist independently of the suit or judgment which has extended [its] existence";

"the judgment serves merely as a measuring rod for the life of the lien." Under this doctrine an assessment lien may last "forever." See Plumb, Federal Tax Collection and Lien Problems, 13 Tax L. Rev. 247, 250–51 (1958).

The cases my brothers cite do not support this novel and potentially harmful doctrine. In Investment & Securities Co. v. United States, 140 F.2d 894, 896 (9th Cir. 1944), where an action for collection of a 1934 lien was commenced in 1937 and judgment was entered in 1941, the court concluded:

> "There is no federal statutory provision as to a period of limitations on this judgment; it follows that in the absence of such a limitation a tax can be collected at any time; therefore, the liability of the tax now merged in the judgment has not become unenforcible by reason of lapse of time."

There is no hint in *Investment & Securities* that an assessment lien exists independently of a judgment. See Hector v. United States, 255 F.2d 84 (5th Cir. 1958). In United States v. Birns, 223 F.Supp. 94 (N.D.Ohio 1963) the government claimed under a writ of execution derived from a "judgment recorded in compliance with § 317.09, Ohio Revised Code" and not on an independent assessment lien. In United States v. Saslavsky, 160 F.Supp. 883 (S.D.N.Y.1957), the government sued on its judgment. The majority cites no other case to substantiate its "independent assessment lien" theory.

The majority concedes that analogous liens under state law have no independent existence. At an earlier stage of the case the government implicitly rejected its present position. In August 1959, after the government had obtained a judgment which it now claims extends its assessment lien forever, the I. R. S. found it necessary to secure a waiver agreement from the taxpayer, to extend the lien until December 31, 1961.

Congress, by providing for the recording of tax assessment liens, I.R.C. § 6323(a)(1), intended to "meet the harsh condition created by the holding in United States v. Snyder, 149 U.S. 210 [13 S.Ct. 846, 37 L.Ed. 705], when federal liens were few, that a federal tax lien was good against a purchaser for value without notice." United States v. Gilbert Associates, 345 U.S. 361, 363–364, 73 S.Ct. 701, 703, 97 L.Ed. 1071 (1953). Congress had a similar intention when it required the docketing of federal judgments according to state law.

> "[The] effect ascribed to judgments in United States courts led to some hardship through the loss of their lands by citizens unaware of the fact of the existence of liens from such judgments, not of record in the county where the land was situated, and this, with kindred considerations, led Congress to pass [an Act on which 28 U.S.C. § 1962 is based, requiring the docketing of federal judgments according to state laws]." Lineker v. Dillon, 275 F. 460, 472–473 (N.D. Cal.1921).

The majority by the present decision not only obviate the need for the government to docket judgments in tax assessment cases, but affirmatively encourage the Internal Revenue Service, because an assessment lien is usually a more convenient tax collection weapon than a judgment, not to docket tax judgments at all.[1]

Assessment liens "created by unilateral action of a government office whose records are closed to public scrutiny * * * may be dangerously secret to the taxpayer's existing and future creditors." 63 Colum.L.Rev. 1259, 1272 (1963). Such a lien seems too powerful a collection weapon to be extended forever by means of an undocketed judgment.

---

1. It is astonishing that in spite of this the majority should conclude that:
"Although permitting the government to foreclose its assessment liens against this property *may lessen the Commis-*sioner's incentive to docket federal judgments* as required by 28 U.S.C. § 1962, we think that our decision is consistent with the intent of Congress." (Emphasis added.)