UNITED STATES of America, Plaintiff,

v.

MARINE MIDLAND BANK, N.A., Defendant.

No. Civ–86–839C.

United States District Court, W.D. New York.

Dec. 18, 1987.

U.S. Dept. of Justice (Daniel F. Brown, Trial Atty., Tax Div., of counsel), Washington, D.C., for plaintiff.

Phillips, Lytle, Hitchcock, Blaine & Huber (Paul K. Stecker, of counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

Defendant Marine Midland Bank, N.A. [Marine] now moves for summary judgment on the grounds that 1) the complaint of the plaintiff United States of America [United States] is barred by the six-year statute of limitations under 26 U.S.C. § 6502, and 2) plaintiff's complaint is legally without merit (Items 7 and 8). The United States opposes defendant's motion and moves for summary judgment on its own behalf (Items 9, 10, and 12). Plaintiff opposes (Item 11).

This action arises out of an Internal Revenue Service [I.R.S.] levy against property of a former Marine customer, Plattsburgh Homes, Inc. [Plattsburgh]. The levy was served on Marine in 1974, and this action was commenced in 1986. The government contends that the levy required Marine to pay the I.R.S. $64,766.96 from two Reserve Accounts maintained on Marine's books in the name of Plattsburgh, in addition to a penalty equal to 50 percent of that amount due to Marine's alleged refusal to honor the levy.

Marine says that Plattsburgh was a mobile home dealer from which Marine purchased retail installment contracts pursuant to a Midland Time Plan Mobile Home Dealer's Agreement [the Agreement]. Under the Agreement, when it purchased a retail installment contract, Marine would credit a percentage of the credit service charge shown in a contract to a Special Reserve Account established on Marine's books in Plattsburgh's name. In some instances, Marine would also credit a percentage of the time balance shown in the contract to a separate Contingent Reserve Account.

Marine contends that Plattsburgh was not entitled to any payment from the Special Reserve Account unless and to the extent the balance of that account exceeded the Minimum Reserve, defined as 10 percent of the total of the unpaid balances of all the outstanding contracts Marine had purchased from Plattsburgh, plus the total of the unpaid balances of all such contracts in default. Because Marine was required to rebate the unearned portion of the credit service charge when a contract was prepaid, the prepayment of a contract would result in a debit to the Special Reserve Account. Marine states that prepayments and defaults would both reduce the amount Plattsburgh might expect to receive from the Special Reserve Account, and Plattsburgh could never be entitled to any of the amounts credited to the account if there was a significant number of prepayments or defaults. Likewise, Marine says that Plattsburgh would never receive an amount credited to the Contingent Reserve Account if the contract for which the credit

was made went into default and proved uncollectable.

Given all of the above, Marine says that: the balances in the Reserve Accounts did not represent cash deposited by or for Plattsburgh Homes; rather, they were bookkeeping entries reflecting amounts Plattsburgh Homes *might* be entitled to receive *if* all the contracts Marine purchased were repaid as scheduled.

Item 8, p. 3 (emphasis in original); *see also* Item 7, Affidavit of John C. Allen [Allen affidavit], ¶ 8.

Marine says that although the government served it with a notice of levy on October 21, 1974, Marine held no property belonging to Plattsburgh at that time. It argues that

the balance in the Special Reserve Account at the time of the levy ($81,878.36) was less than the required Minimum Reserve ($139,584.50), and Plattsburgh Homes was entitled to no part of the $3,850.00 Contingent Reserve Account balance, so Marine owned nothing to Plattsburgh Homes....

*Id.* at p. 4. Subsequently, in early 1983, Marine paid to Plattsburgh balances from the Reserve Accounts totaling $50,839.55, because "[t]here were not outstanding contracts at that time, [and] Plattsburgh Homes was entitled to these balances." Allen Affidavit, ¶ 12. Marine notes that the government did not commence this action until nearly 12 years after the notice of levy.

It is the plaintiff United States' position that its October 21, 1974, levy seized "all property and rights to property" of the taxpayer then in the possession of defendant Marine. It says that "property and rights to property" seized by this levy included not only any then-existing debt of the defendant to the taxpayer, but also its then-existing contractual obligations to the taxpayer, even though the ultimate value of those contractual obligations may not have been fixed on the date of the levy. Thus, in paying the balances in Plattsburgh's Special Reserve Account and Contingent Reserve Account under its contract with Plattsburgh on March 16, 1983, Ma-

rine failed to honor the United States' prior levy, for which it is entitled to recover in addition to interest and the 50 percent penalty pursuant to 26 U.S.C. § 6332(c)(1) and (2).

## I. Statute of Limitations

Marine disagrees and makes three arguments in its papers. First, it argues that this action is barred by the six-year statute of limitations contained in Internal Revenue Code [I.R.C.] § 6502 because it was not commenced until more than 12 years after the I.R.S. assessment against Plattsburgh. Marine contends that this delay is inexplicable because Marine advised I.R.S. of its position in January of 1975 (Item 7, Exh. D).

Defendant says that I.R.C. § 6502 requires that the I.R.S. serve any levy or commence any proceeding to collect a tax within six years after the assessment against the taxpayer. Marine concedes that because the levy in this case was served within five months after the assessment was timely. However, it asserts that because the instant proceeding was not commenced within six years of the assessment, it was untimely.

Marine argues that the United States cannot argue that merely because a levy was served within six years of the assessment, a subsequent action to collect the tax by enforcing the levy need not be commenced within the same six-year period. Defendant says that such a reading of section 6502 would be at odds with its own plain language and would afford the government virtually unlimited time to sue, regardless of the expiration of Marine's six-year limitations period against the taxpayer. Marine claims that there are only two decisions anywhere in the country which address the application of section 6502 to levy enforcement actions. It says that these cases, *United States v. Weintraub*, 613 F.2d 612 (6th Cir.), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1979); *United States v. Stephens*, 568 F.Supp. 1198 (N.D.Cal.1983), both erroneously say that the I.R.S. need only serve the notice of levy within six years of the

assessment. Marine says that these decisions are not binding on this court, and concludes:

> The Code plainly requires that the Government commence any "proceeding" to collect a tax within six years after the assessment, and the statutory language permits no distinction between actions against taxpayers and their transferees on the one hand and actions against garnishees on the other. To allow the Government unlimited time in which to sue a garnishee who is secondarily liable, when it must sue the taxpayer who is primarily liable within six years, would be anomalous and inequitable. Finally, the doctrine of "constructive possession" notwithstanding, it is unrealistic to expect a bank to hold an account indefinitely in response to a notice of levy, all the while denying the customer access to his money, where the I.R.S. by all appearances has acquiesced in the bank's view, communicated clearly and unequivocally many years earlier, that the account was not subject to seizure.

Item 8, pp. 10–11.

The United States disagrees. It argues that there is no specific time on a federal tax assessment lien. Instead, it says that a lien, once valid, survives so long as the underlying liability for the tax is enforceable. *United States v. Hodes*, 355 F.2d 746, 748 (2d Cir.), *cert. denied*, 384 U.S. 968, 86 S.Ct. 1858, 16 L.Ed.2d 680 (1966); *United States v. National Bank of Commerce*, 472 U.S. 713, 720–21, 105 S.Ct. 2919, 2924–25, 86 L.Ed.2d 565 (1985). In fact, it argues that 26 U.S.C. § 6332, and not § 6502, applies here. Plaintiff says that even if this court were to find otherwise, it claims that the six-year limitations period under § 6502 may be extended and that such an extension was consented to in this case.

Citing the Declaration of Daniel F. Brown and Exhibit 2 thereto (Item 9), the United States says that Plattsburgh consented to the extension of the period for the collection of the tax liabilities which were the subject of the October 21, 1974, levy until December 31, 1986, by a Tax Collection Waiver dated December 12, 1974. The present case was commenced on September 8, 1986.

Given the above, the United States says that even if defendant's reading of section 6502(a) were completely correct, the present failure to honor levy proceeding was timely commenced. The United States claims that it is no defense that Marine was unaware that Plattsburgh had extended the statute of limitations without defendant's knowledge. *United States v. Hodes*, *supra*, at 749–50. Even if no extension had been granted, the government says that the present action would be timely for the reasons set forth in the *Weintraub* and *Stephens* cases.

Defendant Marine argues in its Reply (Item 11) that Plattsburgh's consent does not apply to it. Instead, it says that "a waiver of the statute of limitations by the taxpayer cannot affect the garnishee's right to invoke the statute of limitations if it, rather than the taxpayer, is sued" and that, in fact, the waiver form executed by Plattsburgh by its own terms only extended the government's time to collect the unpaid taxes "'from the taxpayer.'" *Id.* at 2. It notes that, unlike the lien on real property involved in the *Hodes* case, which was a matter of public record, defendant had no opportunity to obtain notice of Plattsburgh's waiver.

■ I find the government's arguments persuasive. As was persuasively set forth in the *Weintraub* case, the limitations period under 26 U.S.C. § 6502 requires that the Internal Revenue Service *commence* its action to collect a tax from a taxpayer within six years of the assessment of the tax, but does not apply to section 6332 actions against third parties in possession of a taxpayer's property or property rights. 613 F.2d at 620. The Court of Appeals for the Sixth Circuit reasoned that, unlike suits against taxpayers, section 6332 actions like the instant case are not actions to collect tax but to enforce personal liability for failure to surrender property after receiving a notice of levy. Moreover, as the *Weintraub* court points out, there is no support for the view that the statute of

limitations can be a defense to a section 6332 suit. *Id.* at 620–21. Finally, I find without merit Marine's view that this court's decision could be in any way altered on this issue because of defendant's lack of knowledge about the Tax Collection Waiver consented to by Plattsburgh in 1974. *United States v. Hodes, supra.*

Given the above, defendant's motion for summary judgment on this ground is denied. Plaintiff's motion is granted.

## II. Possession of Property

Secondly, Marine argues that it was not required to make any payment in response to the notice of levy because Plattsburgh was not entitled to any payment from the reserve accounts at the time of the levy and it was uncertain whether Plattsburgh would ever be entitled to any such payment. As such, defendant says that it is plain that it held no property subject to levy. *See United States v. Sterling National Bank & Trust Co.*, 494 F.2d 919, 922 (2d Cir.1974). It argues that all of the relevant case law is based on the principle that "the taxpayer's right to payment under a contract is subject to levy only where the taxpayer has an unqualified, non-contingent right to present or future income." Item 8, p. 14. Apart from this analysis, Marine also claims that if it were required to pay the government the amount credited to the Reserve Accounts for that contract, its risk would be increased by that amount *ex post facto. Id.* at 15–16.

The United States disputes defendant's position. While the government concedes that Plattsburgh could not have withdrawn any money from the Reserve Accounts maintained in its name by Marine on the date of the levy, it asserts that Marine still had possession of Plattsburgh's property or rights to property on the date of the levy. The United States says that its levy:

seized all contract rights of Plattsburgh Homes, Inc. in its mobile home dealer's agreement with Marine, including its contractual right to receive any proceeds of the two reserve accounts created thereunder, *after the completion of the pur-*

*poses for which these two accounts had been created.*

Item 10, p. 8 (emphasis added).

The United States says that the terms of the Midland Time Plan Mobile Home Dealer's Agreement supports its view. It says that a review of the agreement makes plain that the purpose of the Reserve Accounts was to provide security to protect Marine in the event of defaults under retail installment contracts and/or in the event of a default by Plattsburgh on any of its contractual obligations to the defendant bank. The government argues that, under the agreement, Marine is given a security interest in both the Reserve Accounts for any and all of its obligations and is given the right to set-off against the credit balance of either of the Reserve Accounts for any of the taxpayer's obligations. *See* Agreement, ¶ 8(h).

The United States says that this court must now determine whether, under state law, the taxpayer had any right to the proceeds contained in the two Reserve Accounts and, if so, whether this right constitutes "property" as a matter of federal law. *United States v. National Bank of Commerce, supra* 472 U.S. at 727, 105 S.Ct. at 2928.

The government says that, under New York law, the Reserve Accounts created under the Agreement are classified as "special deposits" which were made for the specific purpose of providing collateral security to Marine. The government also says that it is well established that deposits made to a special account, in the absence of a special agreement to the contrary, if not used for the purpose of the special account, are to be returned to the depositor. *E.g., Noah's Ark Auto Accessories*, 64 Misc.2d 944, 316 N.Y.S.2d 663 (Sup.Ct.1970), *aff'd*, 37 A.D.2d 692, 323 N.Y.S.2d 408 (4th Dept. 1971).

Given the above, plaintiff says that, on the date of the levy, defendant Marine was in possession of all contract rights of taxpayer Plattsburgh under the parties' Agreement,

including its contractual right to have returned to it any amount credited to the

special accounts in its name which was not actually used for the purpose of the account, *i.e.*, providing collateral security to Marine.

Item 10, p. 11.

The United States says that Marine's argument that a contingent debt is not attachable is not persuasive. Citing *ABKCO Industries, Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 674–76, 385 N.Y.S.2d 511, 350 N.E.2d 899 (1976), and *Fine Fashions, Inc. v. United States*, 328 F.2d 419, 421–22 (2d Cir.1964), the government says a taxpayer retains a property interest which may be reached by a United States tax levy in funds held by a third party as collateral security, even though the taxpayer could not reach these funds until the purpose for giving the collateral security was accomplished. Accordingly, the United States says that Marine was obligated to hold the Reserve Accounts as custodian for the United States. *United States v. National Bank of Commerce, supra* at 720–21, 105 S.Ct. at 2924–25; 26 U.S.C. § 6332(c)(1).

In Marine's reply (Item 11), it argues that the government misunderstands the facts of this case. Defendant says that, contrary to plaintiff's view, the amount credited to the Reserve Accounts were not included in the "purchase price" as that term was defined in the Agreement. Instead, defendant says that reserve amounts "represented amounts not then payable to the dealer and which the dealer might or might not receive in the future depending on the bank's experience with the contracts it purchased." *Id.*, p. 4. Second, Marine alleges it cannot be held responsible for payment on Plattsburgh's contingent future rights in the money held in the Reserve Accounts because section 6331(b) of the Internal Revenue Code, 26 U.S.C. § 6331(b), limits the scope of the government's levy power to property possessed and obligations existing at the time of the levy.

In the government's reply, it cites the *National Bank of Commerce* and *Fine Fashions* cases in support of its view that: on the date of its levy, even though no amount was then payable to the taxpay-

er, Marine held property or rights to property of taxpayer Plattsburgh Homes, Inc. The taxpayer's contractual rights under its "Midland Time Plan Mobile Home Dealer's Agreement," although contingent, were a property right recognized under New York law and a "beneficial interest" in property, within the ambit of the Second Circuit's decision in *Fine Fashions*. 328 F.2d at 421. This property right was seized by the United States' levy on October 21, 1974, and, in paying the balances in the taxpayer's reserve accounts to the taxpayer on March 16, 1983, Marine failed to honor the United States' levy.

Item 12, p. 13.

■■■ Again, I find the government's arguments persuasive. As was noted in the Second Circuit's decision in *United States v. Sterling National Bank, supra,* and the Supreme Court's *National Bank of Commerce* decision, in deciding whether or not defendant has possession of a taxpayer's property or rights or interests in property subject to government levy in a case like the present one, it must be determined what interest, if any, the taxpayer had in the funds in question because it is well established that the government can stand in no better position than the taxpayer whose property or right to property is being levied upon. Here, unlike the taxpayers in *Sterling National Bank* and *National Bank of Commerce*, it cannot be said that Plattsburgh had the unqualified rights to withdraw the full amounts contained in the reserve accounts. Instead, as both parties acknowledge, Plattsburgh's right to access to these funds was, at the time of the levy, strictly limited by the terms of its Agreement with Marine.

Nevertheless, the *National Bank of Commerce* case makes clear that the statutory language appearing in 26 U.S.C. §§ 6321, 6331(a) and 6332(a) is intended to be read broadly to reach every interest in property that a taxpayer might have, including, I believe, contingent interests like the one involved here. 472 U.S. at 719–20, 105 S.Ct. at 2924. The relevant case law in this area indicates, moreover, that the ser-

vice of a notice of levy upon the custodian of a taxpayer's interest creates a custodial relationship between the person holding the property and the Internal Revenue Service so that the property comes into the constructive possession of the government. While this court concedes that the exact amount owed the government pursuant to government levy may not have been discoverable on October 21, 1974, the facts show that Marine knew the value of Plattsburgh's interest in the Reserve Accounts in March of 1983, when it paid $50,839.55 to Plattsburgh, despite the outstanding levy. This amount should have been turned over to the Internal Revenue Service. Defendant's motion for summary judgment on this ground is denied. Plaintiff's motion is granted.

### III. Statutory Penalties

Finally, Marine argues that even if this court were to find that it was liable for the section 6332(c)(1) taxable amount, it says that it should not be required to pay the 50 percent statutory penalty sought by the government because it did not withhold payment of the tax "without reasonable cause." 26 U.S.C. § 6332(c)(2); *see also United States v. Sterling National Bank & Trust Co., supra* at 923.

The United States disagrees and says that Marine did not reasonably believe that it did not have property belonging to Plattsburgh which was the subject of a levy when it paid the balances of the Reserve Accounts to Plattsburgh on March 16, 1983. *United States v. Augsburger*, 452 F.Supp. 659 (W.D.N.Y.1978), *motion on reconsideration denied*, 477 F.Supp. 94, 96 (W.D.N.Y.1979).

Marine says that to the extent that the *Augsburger* decision supports the government's position that it should not be followed because it imposes a higher standard than that imposed in the *Sterling National Bank* case (Item 11). The United States disputes this view and says that the question of "reasonable cause" must turn on the facts of a particular case (Item 12).

 Because I believe that there exists a rather novel question in this case regarding whether or not Marine possessed any property or rights to property belonging to Plattsburgh that were properly subject to federal tax levy, I believe that Marine's failure to pay such funds over to the federal government to be reasonable. *United States v. Sterling National Bank & Trust Co., supra.* Accordingly, I believe it would be improper to impose the section 6332(c)(2) 50 percent penalty against Marine in this case. Defendant's motion seeking this relief is granted. Plaintiff's motion is denied.

In summary, defendant's motion for summary judgment on statute of limitations grounds is denied. Defendant's motion for summary judgment pursuant to 26 U.S.C. § 6502 is denied. Plaintiff's motion pursuant to 26 U.S.C. § 6332(c)(1) is granted. However, this court declines to impose the section 6332(c)(2) statutory penalty against defendant in this case.

Plaintiff's counsel is directed to prepare a proposed judgment on notice to the defendant and present it to the court for settlement on December 28, 1987, at 9 a.m.

So ordered.