**UNITED STATES of America, Plaintiff,**

v.

**Frances A. BRICKMAN, Michael P. Brickman, Robert T. Brickman and William B. Brickman, Defendants.**

No. 95 C 2843.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 2, 1995.

Ramune Rita Kelecius, United States Department of Justice, Drug Enforcement Agency, Chicago, IL, for plaintiff.

Harvey M. Silets, Timothy J. Patenode, Sean M. Berkowitz, Katten, Muchin & Zavis, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff United States of America ("United States") brought this action against the defendants Frances A. Brickman, Michael P. Brickman, Robert T. Brickman, and William B. Brickman ("Brickman Family") to enforce

federal tax liens on property transferred by Joseph M. Brickman ("J. Brickman") to the defendants, or, alternatively, to set aside the transfers made by J. Brickman to the defendants as fraudulent conveyances. The Brickman Family moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), arguing that the United States' claims are time barred by § 6501 of the Internal Revenue Code ("IRC"), 26 U.S.C. § 6501. Alternatively, the Brickman Family argues that this Court should dismiss that portion of the complaint pertaining to transfers made before J. Brickman was assessed transferee liability for outstanding corporate taxes.

## BACKGROUND

Plaintiff's well-pleaded factual allegations, which the Court accepts as true for purposes of deciding the present motion, *Sladek v. Bell Sys. Mgt. Pension Plan*, 880 F.2d 972, 974–75 (7th Cir.1989), are as follows. In the 1950s and 1960s, J. Brickman operated various corporate construction and real-estate businesses ("unnamed corporations"). Compl. ¶ 10. These unnamed corporations were eventually dissolved with all the corporate assets going to J. Brickman. *Id.* At the time of dissolution, outstanding corporate federal income taxes remained unpaid. *Id.* The outstanding corporate taxes gave rise to over 160 separate tax assessments against J. Brickman as transferee of the unnamed corporations. *Id.* The taxes were assessed on the following dates: (1) 39 assessments on November 9, 1962; (2) 35 assessments on September 6, 1963; (3) 55 assessments on September 13, 1963; (4) 13 assessments on December 6, 1963; (5) 8 assessments on December 13, 1963; (6) 14 assessments on December 27, 1963; and (7) 1 assessment on December 9, 1965. *Id.*

On October 20, 1977, the United States District Court for the Northern District of Illinois entered judgment in favor of the United States and against J. Brickman for the unpaid taxes assessed against J. Brick-

man. *Id.* ¶ 11; *see United States v. Brickman*, No. 73–C–3244. The amount of the judgment was $1,291,064.22, plus interest at the rate of 6% from the date judgment was entered. *Id.* J. Brickman failed to pay the assessments and judgment against him, and that judgment, plus statutory interest, remains due and owing. *Id.* ¶ 12. To date, the amount outstanding exceeds $3 million. *Id.* ¶ 11.

On November 28, 1960, aware that his taxes were being audited and that he had substantial pending federal tax liabilities, J. Brickman formed the J.M. Brickman Mid–West Corporation ("Brickman Mid–West"). *Id.* ¶ 13. Brickman Mid–West issued 160,000 shares of common stock. *Id.* Subsequently, J. Brickman transferred all of his assets to Brickman Mid–West and issued 124,845 shares to himself, 20,385 shares to Frances A. Brickman (his wife) and 2,954 shares to each of his sons, William B. Brickman, Robert T. Brickman, and Michael P. Brickman. *Id.* The unaccounted for 5,908 shares were apparently issued to J. Brickman who subsequently transferred 130,753 shares to the Brickman Family.[1] *Id.* ¶ 14. At the time the transfers were made, they had a combined value in excess of $1.2 million. *Id.* ¶ 15.

From 1963 through 1966, J. Brickman transferred personal assets into Highland Park Country Club, Inc. ("HPCC"), a company in which the Brickman Family owned 72.5% of the stock. *Id.* ¶ 16. No consideration was provided for this transfer. *Id.* From 1964 through 1969, J. Brickman transferred personal assets into Chicagoland Investment Corporation ("Chicagoland"), a company in which the defendants owned 100% of the stock. *Id.* ¶ 17. No consideration was provided for this transfer. *Id.*

J. Brickman failed to pay the federal tax liabilities after notice and demand for payment, giving rise to federal tax liens under 26 U.S.C. § 6321. *Id.* ¶ 18. The liens attached

---

**1.** The 130,753 went to the Brickman sons as well as J. Brickman's wife. The three sons each received an additional 24,690 shares in three increments: (1) 20,000 shares on February 18, 1962; (2) 2,500 shares on December 21, 1968; and (3) 2,460 shares on January 19, 1969. J. Brick-

man's wife received an additional 55,873 shares in five increments: (1) 2,954 shares on August 5, 1961; (2) 2,954 shares on March 20, 1962; (3) 45,000 shares on April 7, 1965; (4) 2,500 shares on December 21, 1968; and (5) 2,465 shares on January 19, 1969.

to all property and rights to property belonging to J. Brickman, including the stock of Brickman Mid–West and the assets transferred to HPCC and Chicagoland. *Id.* ¶ 18. The transfers of corporate stock described above were made subject to the federal tax liens securing all assessments made prior to the dates of transfer. *Id.* ¶ 19. Additionally, as a result of the October 20, 1977 judgment, the United States gained a judgment lien against the property belonging to J. Brickman which was recorded in Cook County on May 31, 1978. *Id.* ¶ 20.

J. Brickman died on December 14, 1977. *Id.* ¶ 21. At the time of his death, J. Brickman's estate consisted of personal property valued at approximately $3,000. *Id.* ¶ 22. The various transfers of assets from J. Brickman to the companies controlled by the Brickman Family were made without consideration and at a time when J. Brickman was insolvent or was rendered insolvent as a result of the transfers. *Id.* ¶ 23. After the transfers took place, the remaining assets of J. Brickman were less than the amount necessary to pay his liabilities then owing to the United States. *Id.*

The United States alleges that the transfers of J. Brickman's assets were made with the intent to delay, hinder or defraud creditors and, therefore, were null and void. *Id.* ¶ 24. The United States filed suit seeking the following: (A) a determination that the transfers of J. Brickman's assets to the Brickman Family were made subject to a federal tax lien or, in the alternative, that the transfers were fraudulent and void as against the United States, *id.* ¶ A; (B) judgment that the United States has valid and continuing liens on all property and rights to property belonging to J. Brickman, including property fraudulently conveyed, *id.* ¶ B; (C) judgment that the Brickman Family became constructive trustees of the property fraudulently conveyed to them by J. Brickman, and, therefore, hold such property, and any proceeds from such property, for the benefit of the United States, *id.* ¶ C; (D) an accounting by the Brickman Family to determine the value of the property fraudulently conveyed to them by J. Brickman as of the dates of the transfers, and to determine the value of the

income from the property subject to the constructive trust, *id.* ¶ D; and (E) judgment that the Brickman Family members are jointly and severally liable to the United States for the value of the property fraudulently transferred to them by J. Brickman, to the extent that the value of such property does not exceed J. Brickman's liability to the United States. *Id.* ¶ E.

The Brickman Family subsequently filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). The Brickman Family argues that in the absence of assessments against the Brickman Family, the United States' claims are time-barred by 26 U.S.C. § 6501, since the claims were not brought within three years from the date the corporate tax returns were filed. Defs.' Mem. at 1–2. Alternatively, the Brickman Family argues that this Court should dismiss the portion of the complaint seeking to recover transfers made before J. Brickman was assessed transferee liability for the corporate taxes. *Id.* at 2.

## ANALYSIS

### Rule 12(b)(6) Standards

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Assocs., Inc. v. Chicago Housing Auth.,* 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). The only question is whether relief is possible under any set of facts that could be established consistent with the allegations. *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir.1991) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). All well-pleaded facts are taken as true, all inferences are drawn in favor of the plaintiff and all ambiguities are resolved in favor of the plaintiff. *Id.* A Rule 12(b)(6) motion will only be granted if " 'it is beyond a doubt that the non-movant can plead no facts that would support his claim for relief.' " *Palda v. General Dynamics Corp.,* 47 F.3d 872, 874 (7th Cir.1995) (quoting *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–102)).

The limited questions presently before this Court are (1) whether the United States'

complaint is time-barred, and (2) whether the United States may proceed under a "lien" theory or fraudulent conveyance theory as to transfers made prior to the assessments against J. Brickman.

*Statute of Limitations*

Section 6501 of the IRC requires the United States to assess taxes within three years after the filing of a return. 26 U.S.C. § 6501(a).[2] Absent such an assessment, Section 6501 requires a proceeding in court to collect the tax to be commenced within three years after the return was filed. 26 U.S.C. § 6501(a). Where the assessment of any tax has been made within the three year period, Section 6502 requires the United States to commence an action to collect the assessed taxes within six years of the assessment. 26 U.S.C. § 6502(a)(1).[3] Where a timely action has been commenced by the United States, the statute of limitations stops running, and the United States can enforce the judgment at any time. *United States v. Ettelson,* 159 F.2d 193, 196 (7th Cir.1947).

The Brickman Family argues that, because no assessment was made against either the unnamed corporations or the Brickman Family, the United States is time-barred under 26 U.S.C. § 6501(a), applied to "transferees of a transferee" by 26 U.S.C. § 6901(c)(2),[4] from a proceeding to collect taxes against the Brickman Family. Defs.' Mem. at 1–2. The

United States, on the other hand, argues that it seeks not to collect taxes from the Brickman Family, but rather to enforce a tax assessment lien levied against J. Brickman and to hold the Brickman Family liable for the value of property fraudulently transferred to them by J. Brickman. Pl.'s Resp. at 4. As such, the United States contends that there is no specific time limitation on the collection of a tax assessment lien. *Id.* at 5. Instead, it suggests that a lien, once valid, survives so long as the underlying liability for the tax is enforceable. *Id.* We concur with the government's position.

**a. The "Lien" Theory**

Section 6321 of the IRC provides that "[i]f any person liable to pay any taxes neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all such property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. 6321. In the present case, J. Brickman failed, after notice and demand for payment, to respond to assessments issued in 1962, 1963, and 1965. Compl. ¶ 18. As a result, federal tax liens arose under 26 U.S.C. § 6321. There is no specific time limitation on the life of an assessment lien. *United States v. Hodes,* 355 F.2d 746, 747 (2d Cir.), *cert. granted,* 384 U.S. 968, 86 S.Ct. 1858, 16

---

**2.** Section 6501(a) provides in pertinent part:
Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within three years after the return was filed (whether or not such return was filed on or after the date prescribed) . . . , and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.
26 U.S.C. § 6501(a).

**3.** Section 6502 provides in pertinent part:
(a) Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
(1) within [6] years after the assessment of the tax. . . .
26 U.S.C. § 6502(a)(1). The current version of Section 6502 provides a ten year limitation period; however, the statute provided a six year limitation period during the times relevant to the current suit.

**4.** Section 6901 provides in pertinent part:
(c) Period of limitations.—The period of limitations for assessment of any such liability of a transferee . . . shall be as follows:

\* \* \* \* \* \*

(2) Transferee of transferee.—In the case of the liability of a transferee of a transferee, within 1 year after the expiration of the period of limitation for assessment against the preceding transferee, but not more than 3 years after the expiration of the period of limitation for assessment against the initial transferor; except that if, before the expiration of the period of limitation for the assessment of the liability of the transferee, a court proceeding for the collection of the tax or liability in respect thereof has been begun against the initial transferor or the last preceding transferee, respectively, then the period of limitation for assessment of the liability of the transferee shall expire 1 year after the return of execution in the court proceeding.
26 U.S.C. § 6901(c)(2).

L.Ed.2d 680 (1966), *cert. dismissed,* 386 U.S. 901, 87 S.Ct. 784, 17 L.Ed.2d 779 (1967); *Ettelson,* 159 F.2d at 196; *Investment & Secs. Co. v. United States,* 140 F.2d 894, 896 (9th Cir.1944). Rather, under Section 6322 of the IRC, those liens survive until the underlying liability is satisfied or "become[ ] unenforceable by reason of lapse of time." 26 U.S.C. § 6322.[5] The phrase "by reason of lapse of time" must be interpreted in light of 26 U.S.C. § 6502, *Moyer v. Mathas,* 458 F.2d 431, 433 (5th Cir.1972); *United States v. Colamatteo,* No. 83 C 7439, 86–2 U.S. Tax Cas. (CCH) ¶ 9719, 1986 WL 9752 (N.D.Ill. 1986), which requires that the United States commence its action to collect a tax from an assessed taxpayer within six years of the assessment of the tax. Thus, the appropriate statute of limitations in the present action is Section 6502, not Section 6501(a) as the Brickman Family suggests.

■ In the present action, the United States assessed J. Brickman as the transferee of the unnamed corporations. Compl. ¶ 10. Subsequently, the United States brought a suit and obtained a judgment to collect taxes against J. Brickman. *Id.* ¶ 11. The court proceeding brought against J. Brickman was sufficient to stop the running of the statute of limitations contained within § 6502, and the resulting judgment could thereafter be enforced at any time. *United States v. Weintraub,* 613 F.2d 612, 619–20 (6th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980) ("There is no time limit whatsoever on an action ... to enforce a timely levy or judgment obtained in a timely filed court proceeding."); *United States v. Hodes,* 355 F.2d at 748 ("The institution of a suit to enforce the lien of a tax liability extends the life of an assessment lien beyond the normal six-year period."); *Ettelson,* 159 F.2d at 196 (A timely "judgment could thereafter be enforced at any time.

There is no federal statutory provision as to the period of limitation on this judgment."). The judgment was a proper claim upon which to assert a lien. *Id.* Therefore, the tax liens against J. Brickman's property are valid and enforceable.

In its motion to dismiss, the Brickman Family relies on *United States v. Continental Nat'l Bank & Trust Co.,* 305 U.S. 398, 59 S.Ct. 308, 83 L.Ed. 249 (1939), *United States v. Updike,* 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984 (1930), and *Signal Oil & Gas Co. v. United States,* 125 F.2d 476 (9th Cir.1942) for the proposition that when the original taxpayer has not been assessed, the applicable limitation for a suit against the "transferee of a transferee" is found within Section 6501. Defs.' Mem. at 9. The Brickman Family's reliance on these cases is misplaced.

In none of the cases relied on by the Brickman Family was there a personal judgment against the taxpayer transferor determining the taxpayer's liability for previously assessed taxes. In *Updike,* for example, a grain company filed income taxes for the year 1917. 281 U.S. at 490, 50 S.Ct. at 367. Three years later, the United States assessed the grain company additional income taxes for the year 1917. *Id.* The grain company never paid the additional taxes, and, in 1927, the United States first brought suit against the corporate stockholders as transferees of the corporation. *Id.* The issue, as the Court framed it, was "whether the suit, having been brought more than six years after the assessment, was barred by the provisions of section 278 [now Section 6502]...."[6] The Court first determined that the action, though not against the original taxpayer corporation but against its transferees, was "in every real sense a proceeding in court to collect a tax. The tax imposed upon the corporation is the basis of the liability, whether sought to be enforced directly against the corporation or

---

5. Section 6322 provides:

Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

26 U.S.C. § 6322.

6. Section 278 was the predecessor to the current Section 6502 and provided that where an assessment was made, the assessed tax could be collected by a proceeding in court if begun within six years after the assessment. *Updike,* 281 U.S. at 491–91, 50 S.Ct. at 367–68 (quoting and discussing section 278).

by suit against its transferees." *Id.* at 494, 50 S.Ct. at 368. The Court then determined that if "the period of limitation had run in favor of the corporation, it had run in favor of the transferees." *Id.* The Court reasoned that where an assessment "has in fact been made, a proceeding to collect must be begun within six years thereafter . . . ." *Id.*

Unlike *Updike*, in the present case the United States assessed the original taxpayers' transferee, filed suit against the transferee, and obtained a judgment against the transferee. Compl. ¶¶ 10–11. The United States seeks now only to enforce the judgment; it does not seek to collect a tax (that was done in the previous action against J. Brickman). This distinction is critical. Having gained a timely judgment against J. Brickman, the statute of limitations stops running, and the United States can enforce the judgment at any time. *Ettelson*, 159 F.2d at 196. Absent such a judgment, we agree with the Brickman Family that the United States would be time-barred from suing the Brickman Family as "transferees of a transferee" to collect the unpaid taxes. *See* 26 U.S.C. 6901(c)(2). But we must acknowledge the judgment against J. Brickman. As such, the tax liens against J. Brickman's property are valid and enforceable.

The Brickman Family puts much weight on the fact that J. Brickman was not the original taxpayer. *See* Defs.' Reply at 2–3. For instance, the Brickman Family attempts to distinguish *United States v. Ettelson*, 159 F.2d at 193, and *United States v. Colamatteo*, No. 83 C 7439, 86–2 U.S. Tax Cas., on the ground that neither case involved a "transferee of a transferee," but rather both cases involved the assessment of an original taxpayer followed by a timely court proceeding against the original taxpayer. *See* Defs.' Reply at 2–3. This distinction, however, is of no consequence.

The IRC does not require the United States to assess and sue the original taxpayer prior to assessing a transferee. To the contrary, the IRC allows the United States to assess and sue either a transferee or a "transferee of a transferee" so long as the relevant time limitations are followed. *Compare* 26 U.S.C. § 6901(a)(1)(A) (discussing the liabilities of a transferee) [7] *with* 26 U.S.C. § 6901(c)(2) (discussing the liabilities of a transferee of a transferee). In the present case, J. Brickman, a transferee of the original taxpayer, was timely assessed followed by a timely court proceeding resulting in a judgment for the United States. The United States is not time-barred from bringing the present action to enforce assessment liens precisely because the United States previously obtained a judgment against J. Brickman as the transferee of the original taxpayer. The United States can enforce that judgment at any time. *Ettelson*, 159 F.2d at 196. The fact that J. Brickman was a transferee of the original taxpayer and not the original taxpayer does nothing to undermine this determination which is well supported by precedent. *See, e.g., Moyer v. Mathas*, 458 F.2d 431, 434 (5th Cir.1972) (allowing foreclosure suit brought twenty years after timely lien); *United States v. Overman*, 424 F.2d 1142, 1147 (9th Cir.1970) (holding that foreclosure suit brought six years after judgment in timely suit was not time-barred because tax liens are enforceable at any time); *Hodes*, 355 F.2d at 748–49 (finding that the institution of a suit to enforce tax liability extends the life of an assessment lien beyond the six-year period); *Hector v. United States*, 255 F.2d 84, 85 (5th Cir.1958) (holding that suit filed within six years of assessment tolls the limitation period indefinitely); *Ettelson*, 159 F.2d at 196 (holding claim filed in probate court within six years of assessment tolls the limitation period so that judgment could be enforced at anytime thereafter); *Investment*

---

7. Section 6901(a)(1)(A) provides in pertinent part:

(a) Method of collection.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes to which the liabilities were incurred:

(1) Income, estate, and gift taxes.—
(A) Transferees.—The liability, at law or in equity, of a transferee of property—
(i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes) . . . .
26 U.S.C. § 6901(a)(1)(A)(i).

*& Secs. Co.*, 140 F.2d at 896 (finding that no federal statutory limitation on enforcing a judgment won in a timely suit exists allowing a tax to be collected at any time); *United States v. Mandel*, 377 F.Supp. 1274, 1276–77 (S.D.Fla.1974) (following *Moyer*); *United States v. American Cas. Co.*, 238 F.Supp. 36, 38–39 (W.D.Ky.1964) (following *Ettelson*); *United States v. Caldwell*, 74 F.Supp. 114, 117 (M.D.Tenn.1947) (finding no time limit on enforcing a lien acquired in timely suit).[8]

**b. The Fraudulent Conveyance Theory**

■ Section 6501 is also inapplicable to the United States' fraudulent conveyance theory. In this case, the original taxpayers were the unnamed corporations. Compl. ¶ 10. J. Brickman was a transferee of the unnamed corporations.[9] *Id.* The Brickman Family is, therefore, a "transferee of a transferee." Section 6901 governs assessments against and collection from transferees of a transferee. 26 U.S.C. § 6901(c)(2). However, Section 6901 "does not apply to actions to set aside fraudulent conveyances, actions brought ancillary to collection actions against assessed taxpayers." *United States v. Colamatteo*, No. 83 C 7439, 86–2 U.S. Tax Cas. (CCH) at ¶ 9720; *see also, Hall v. United States*, 403 F.2d 344, 345 (5th Cir.1968), *cert. denied*, 394 U.S. 958, 89 S.Ct. 1306, 22 L.Ed.2d 560 (1969).

■ The Brickman Family has not been sued personally as "transferees of a transferee." Rather, the Brickman Family has been sued because the United States seeks to set aside allegedly fraudulent conveyances of property to them and to satisfy J. Brickman's tax liability from that property. Compl. ¶¶ A–E. Section 6901 does not bar the present action against the Brickman Family, which is ancillary to the collection action previously brought against J. Brickman, the assessed taxpayer. Thus, we deny the Brickman Family's motion to dismiss the United States' complaint on the ground that the complaint is time-barred.

*Property Transferred Pre–Assessment*

Having determined that the United States' complaint is not time-barred, we turn now to the Brickman Family's alternative ground for dismissal. The Brickman Family argues that the United States should not be allowed to proceed on the portion of the complaint that seeks to recover conveyances that occurred prior to the assessments against J. Brickman. Defs.' Mem. at 9–10.[10] We disagree.

■ Federal tax liens under Section 6321 do not arise until unpaid taxes are assessed. 26 U.S.C. § 6321; *United States v. Speers*, 382 U.S. 266, 267 n. 1, 86 S.Ct. 411, 412 n. 1, 15 L.Ed.2d 314 (1965); *United States v. General Motors Corp.*, 929 F.2d 249, 253 (6th Cir.1991); *Zeddies v. United States*, 357 F.2d 897, 899 (7th Cir.1966). As a result, "a tax lien cannot attach to property which has been previously assigned or transferred by the taxpayer at the time the assessment is made. Assignments made prior to a tax assessment preclude lien attachment." *General Motors*, 929 F.2d at 253. Therefore, in the present case, the United States can only recover the property transferred prior to assessment on

---

**8.** In a similar vein, courts have held that the limitations period contained in Section 6502 does not apply to section 6332 actions, 26 U.S.C. § 6332, against third parties in possession of a taxpayer's property or property rights. *See, e.g., United States v. Weintraub*, 613 F.2d at 619–20; *United States v. Marine Midland Bank, N.A.*, 675 F.Supp. 775, 778 (W.D.N.Y.1987). These courts reason that, unlike suits against taxpayers, Section 6332 actions are not actions to collect taxes but to enforce personal liability for failure to surrender property after receiving a notice of levy. *Weintraub*, 613 F.2d at 620.

**9.** The United States erroneously refers to J. Brickman as the original taxpayer. *See, e.g.*, Pl.'s Resp. at 2. This error, however, is of no consequence.

**10.** The first assessment against J. Brickman occurred on November 9, 1962. Compl. ¶ 10. Prior to that assessment, J. Brickman formed Brickman Mid–West, transferred all of his assets to Brickman Mid–West, and issued 20,385 shares to his wife, and 2,954 shares to each of his three sons. *Id.* ¶ 13. Three other transfers predated the first assessment against J. Brickman: (1) the transfer of 20,000 shares to each of his sons on February 18, 1962; (2) the transfer of 2,954 shares to his wife on August 5, 1961; and (3) the transfer of 2,954 shares to his wife on March 20, 1962. ¶ 14. All remaining transfers to the Brickman Family and to corporations controlled by the Brickman Family occurred after the assessments began. ¶¶ 14, 16–17.

a theory of fraudulent conveyance. *See Zeddies*, 357 F.2d at 899 (noting that where transfer are made prior to assessment, the United States can only recover on a theory that the conveyance was fraudulent).

To set aside transfers as fraudulent conveyances, the United States must establish that its rights as a "creditor" were impaired at the time the conveyances were made. Thus, the limited question that this Court must decide today is whether the United States was a "creditor" whose rights were impaired at the time J. Brickman transferred his property to the Brickman Family. If so, then the United States may be able to invalidate the conveyances as being fraudulent, rendering the property subject to the United States' tax lien (provided that the United States can successfully establish all the elements of fraudulent conveyance, an issue which is not presently before the Court). *United States v. Kitsos*, 770 F.Supp. 1230, 1236 (N.D.Ill.1991), *aff'd without op.*, 968 F.2d 1219 (7th Cir.1992).[11]

■ Courts facing this issue in this district have found that for fraudulent conveyance purposes, the United States is a creditor as to any unpaid tax liabilities prior to the issuance of an assessment. *United States v. Brown*, 820 F.Supp. 374, 383 (N.D.Ill.1993); *United States v. Kitsos*, 770 F.Supp. at 1234–35; *Indiana Nat'l Bank v. Gamble*, 612 F.Supp. 1272, 1276–77 (N.D.Ill.1984). The courts reason that such liabilities become due and owing on the date the tax returns are required to be filed, not on the date of assessment. *Brown*, 820 F.Supp. at 383; *Gamble*, 612 F.Supp. at 1276. We find these cases to be persuasive and hold that the United States in the instant case is a creditor as to all the unpaid tax liabilities belonging to the unnamed corporations and assessed against J. Brickman.

The Brickman Family attempts to distinguish these cases on the ground that the assessments in the above cited cases were against a taxpayer for deficiencies arising from the taxpayers' own return while the present case involves an assessment against a transferee of a taxpayer's property. Def.'s Mem. at 10. We find this distinction to be without merit.

In the present case, the United States became a creditor of the unnamed corporations on the date the corporate tax returns were required to be filed. *See Brown*, 820 F.Supp. at 383. Subsequently, the corporations dissolved with all the corporate assets going to J. Brickman. As a result, the United States' claims against J. Brickman as transferee of the corporate property arose as soon as J. Brickman obtained the corporate property. Indeed, the United States alleges that as early as November 28, 1960, J. Brickman was "aware that his taxes were under audit by the Internal revenue Service and that he had substantial pending federal tax liabilities...." Compl. ¶ 13.

■ Taking all well-pleaded facts as true, as we are required to do in deciding a motion to dismiss, J. Brickman was aware of contemplated or existing indebtedness prior to the assessments. This awareness is sufficient to allow the United States to proceed on a fraudulent conveyance theory. *See Gamble*, 612 F.Supp. at 1276–77. Even though the United States' claim against J. Brickman was not reduced to assessments and judgment until after J. Brickman conveyed some of his property to the Brickman Family, "for purposes of a fraudulent conveyance action a 'creditor' becomes such when its claim arises, even if its claim is contingent and regardless of the fact that the claim has

---

**11.** The Illinois Supreme Court has succinctly articulated the means by which a plaintiff can establish fraudulent conveyance:

> Illinois recognizes two categories of fraudulent conveyances: those which are fraudulent in fact and those which are fraudulent in law. In fraud-in-fact cases a specific intent to "disturb delay, hinder or defraud" must be proved.... In fraud-in-law cases, on the other hand, a conveyance may be presumed fraudulent based on certain circumstances surrounding the conveyance. In order to establish that a conveyance is fraudulent in law, three elements must be present: (1) there must be a transfer made for no or inadequate consideration; (2) there must be existing or contemplated indebtedness against the transferor; and (3) it must appear that the transferor did not retain sufficient property to pay his indebtedness.

*Gendron v. Chicago & N.W. Transp. Co.*, 139 Ill.2d 422, 437–38, 151 Ill.Dec. 545, 552–53, 564 N.E.2d 1207, 1214–15 (1990) (citations omitted).

not matured or been reduced to judgment until after the conveyance." *Brown,* 820 F.Supp. at 383. Thus, we hold that the United States may proceed on a fraudulent conveyance theory pertaining to all of the allegedly fraudulent transfers. The Brickman Family's motion to dismiss is denied.

## CONCLUSION

The Brickman Family's motion to dismiss is denied in all respects.